# T. Broom Belfield, trading as H. Belfield & Company, v. The National Supply Company, Appellant.

*Principal and agent—Undisclosed principal—Contract.*

One who gives an order for goods to A cannot have it transferred by A to B without the buyer's knowledge and consent. And even if it turns out that A was all the time only agent for B as an undisclosed principal, yet B's rights under the contract will be limited by the rights which the buyer has in good faith acquired against A while dealing with him as principal.

D. & K., either as dealers on their own account or as agents of the plaintiff, an undisclosed principal, were indebted to defendant. Subsequently other goods were ordered by defendant from D. & K., but before some of them were delivered to defendant, he had notice of the plaintiff's ownership. There was evidence that a portion of the goods had been received before notice, and some admittedly after it; and that some of the acts and correspondence of defendant tended to show ratification of the order as coming directly from defendant to plaintiff, and some of them tended to show the contrary. *Held,* (1) that defendant was bound to refuse all goods delivered after notice, or account for them to plaintiff; (2) that as to goods delivered before notice he could set off his claim against D. & K.; (3) that the question, what goods had been delivered before notice and what goods had been delivered after notice, was for the jury.

Argued Nov. 8, 1898. Appeal, No. 149, Oct. T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1897, No. 166, on verdict for plaintiff. Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover for goods alleged to have been sold and delivered by plaintiff to defendant.

At the trial the court gave binding instructions for plaintiff. Verdict for plaintiff for $1,528.95.

On a rule for a new trial McCLUNG, J., filed the following opinion, which states the facts:

Plaintiff sues defendant for the price of certain goods, viz: iron cocks, sold and delivered to defendant by or through the firm of Dickson & Kerr. It is admitted that the goods were those of plaintiff, and that they were shipped to defendant by plaintiff and received by defendant. It is also admitted that

the price charged is correct. The defense set up is that the goods were purchased under such circumstances that defendant is entitled to set off against their price a balance due it by Dickson & Kerr, since prior to the first order given.

Dickson & Kerr did business in the city of Pittsburg and were general sales agents for a number of manufacturers, especially for the Titusville Iron Works. They also acted as jobbers and dealers. They both purchased and sold goods for the defendant company, and sold goods to and purchased them from said company. For some eighteen months prior to November, 1896, Dickson & Kerr, in the course of their numerous dealings with defendant, had received orders for various small lots of goods, such as the present orders, which they (D. & K.) then purchased from plaintiff, who did business in Philadelphia. These goods were shipped direct from plaintiff's works to defendant, consigned to defendant, the shipping receipt being sometimes given in the name of plaintiff and sometimes in that of Dickson & Kerr. Dickson & Kerr paid plaintiff for them and sold them to defendant. At the beginning of November, 1896, the book showed a balance in favor of defendant as against Dickson & Kerr, on their various transactions, of about $1,500. During November and December, 1896, defendant gave Dickson & Kerr four orders for iron cocks. Dickson & Kerr ordered goods to the amount of these several orders from plaintiff directing that they be charged to defendant. Plaintiff shipped the goods direct to defendant, one order on December 10, 1896, two on December 31, 1896, and one on January 22, 1897. The goods arrived in Pittsburg (part of them at Toledo, Ohio), within a day or two after shipment, and on January 7 or 8, 1897, defendant was notified by an invoice of the goods then shipped, received from plaintiff, through Dickson & Kerr, that the goods had been charged directly to defendant. At the time of this notice the fourth order had not yet been shipped, and part of the others were probably yet in the hands of the railroad company, the balance being in defendant's warehouse. Defendant, while it insisted that the purchase had been made from Dickson & Kerr, and not from plaintiff, retained the goods shipped, and called for the filling by plaintiff of the unshipped order.

Some time in February, 1897 (it would seem February 17), defendant credited upon the account of Dickson & Kerr the

amount of these four shipments. The present suit is for the price of these four bills. When these goods were bought and shipped, plaintiff did not know that Dickson & Kerr were indebted to defendant, and he acted in the matter in good faith. Nothing was said upon the subject, but plaintiff intended to pay Dickson & Kerr the usual commission for making the sale to defendant. Defendant gave to Dickson & Kerr nothing on the faith of these orders. It is conceded that plaintiff can recover, unless the price of the goods has been applied upon an account to which it is legally applicable. The goods were those of plaintiff. Defendant seeks to apply them to the payment of the debt of Dickson & Kerr. As one cannot be directly divested of the title to his property without his assent, so the same object cannot be attained by applying the price of one man's property to the payment of another's debt.

There are apparent exceptions to this rule, but they are, in the eyes of the law, cases where the rule is recognized, but the real owner is, by some act of his own, estopped to say that the property does not belong to him whose debt is paid or sought to be paid. The burden is upon the defendant here of showing that plaintiff is estopped.

It is contended that plaintiffs were the undisclosed principals of Dickson & Kerr, and that therefore under the case of Frame v. Coal Co., 97 Pa. 309, the indebtedness of Dickson & Kerr can be set off.

Frame v. Coal Co. is founded upon George v. Clagett, 2 Smith's Leading Cases, 118, and certainly never was intended to cover every case where an agent sells without giving the name of his principal. The estoppel is based not upon the act of the agent, but upon the act of the principal. George v. Clagett was explained by Baring v. Corrie, 2 Barn. & Ald. 137, where the distinction is taken between a factor and a broker. Mechem on Agency, sec. 773, states the rule as follows, viz.:

" In order to establish such set-off, the defendant must show: (1) that the contract was made by a person whom the plaintiff had entrusted with the possession of the goods with power to sell them; (2) that the person sold them as his own goods and in his own name as principal; (3) that the defendant dealt with him as, and believed him to be, the principal in the transaction, up to the time that the set-off accrued."

The present case is much more like the case of Baring v. Corrie than it is like the case of George v. Clagett, and in fact the equities in favor of the set-off were greater in Baring v. Corrie than they are in the present case. Frame v. Coal Co. may seem in some respects to go slightly further than George v. Clagett, but still even if the coal was shipped directly to the purchaser by the coal company, the transaction was fully completed in the name of Pollock & Medler, and in fact seems to have been really a sale by the coal company to Pollock & Medler. It was at all events a case in which the coal company intended to and did authorize Pollock & Medler to deal with the coal as their own, and hence was estopped to question the set-off. In the present case, plaintiff, on Dickson & Kerr's representation that they had made a sale for plaintiff to defendant, shipped directly and gave notice before defendant had changed its position.

Nor can defendant's counsel sustain his contention that plaintiff by suing ratified the purchase from Dickson & Kerr and must take cum onere. The goods were not furnished on this contract, but on a contract purporting to make defendant the immediate purchaser from plaintiff, and if defendant, upon being informed of the facts, did not wish to stand to this contract, it was for it to refuse to do so. Plaintiff had shipped the goods to defendant as a purchaser and certainly had no option to take them back, if defendant desired to keep them, even if Dickson & Kerr had reported a sale which had not at the time been actually made. No goods had in fact been furnished by plaintiff on the contract between defendant and Dickson & Kerr, and the option as to ratification of the contract on which they were furnished lay wholly with defendant.

It will be noticed that the goods included in the last order were not shipped when the true state of the deal became fully known to defendant, and that still defendant insisted that these goods be shipped. As defendant's counsel read Frame v. Coal Co., it authorizes the application of the price of this last shipment to the payment of Dickson & Kerr's debt, just as he maintains it does as to the other shipments. This certainly cannot be successfully maintained. Nor do we think that there is any greater reason for allowing the other goods to be so appropriated. The defendant has failed in its attempt to show a

legal right to apply plaintiff's goods to the settlement of Dickson & Kerr's account, and plaintiff is entitled to recover his claim.

Judgment was entered on the verdict.   Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*A. Leo Weil*, with him *Charles M. Thorp*, for appellant.—Defendant's contracts having been made with Dickson & Kerr as principals, and defendant having had no contractual relations of any kind with the plaintiff, the plaintiff's rights, if he adopts this contract of his agent and elects to proceed thereon, rise no higher than agent's rights, and as defendant could set off the amount due it from Dickson & Kerr against any claim made by the latter, so also can it set off said amount against any claim made by the plaintiff : Frame v. Wm. Penn Coal Co., 97 Pa. 309 ; Hogan v. Shorb, 24 Wendell, 458.

The case of Hogan v. Shorb is authority for another insurmountable difficulty in the way of plaintiff's recovery ; that is, having learned of the unauthorized act of his agents, he was put to an election of either affirming the contract his agents had made with plaintiff, or promptly demanding the return of his goods : Benjamin on Sales (ed. 1884), sec. 745 ; Ramazotti v. Bowring, 7 C. B. (N. S.) 851; George v. Clagett, 7 Durnford & East, 359 ; Baring v. Corrie, 2 Barn. & Ald. 137.

The cases of Barker v. Dinsmore, 72 Pa. 427, and McMahon v. Sloan, 12 Pa. 229, were cited by counsel for plaintiff on the argument in the court below.   But these are cases of replevin and trover, respectively, and do not, we submit, touch the present question.

*George B. Gordon*, with him *John Dalzell* and *William Scott*, for appellee.—It is perfectly clear that this is not a case where appellants can set off against the claim of Belfield & Co., an indebtedness of the brokers, Dickson & Kerr to them : Mechem on Agency, sec. 773 ; Semenza v. Brinsley, 18 C. B. (N. S.) 467 ; Fish v. Kempton, 7 Man., Gr. & S. 687 ; Bliss v. Bliss, 7 Bosw. (N. Y.) 339; Baring v. Corrie, 2 Barn. & Ald. 137 ; Miller & Co. v. Lea & Co., 35 Md. 407.

The cases relied upon by the appellant, Hogan v. Shorb, 24 Wendell, 458, and George v. Clagett, 7 Durnford & East, 359, were both cases of factors intrusted with the possession of the goods.

The Pennsylvania case upon which they rely is Frame v. William Penn Coal Co., 97 Pa. 309. That case is directly within the rule above referred to, and is no authority to sustain the appellant's claim.

There is also a long line of cases in Pennsylvania which establish broadly the legal principle that a purchaser acquires no other title than the seller had, and the acts of ownership by a third party inconsistent with the owner's title, must be brought to his knowledge in order to affect his title in favor of strangers: McMahon v. Sloan, 12 Pa. 229; Decan v. Shipper, 35 Pa. 239; Barker v. Dinsmore, 72 Pa. 427; Quinn v. Davis, 78 Pa. 15; Kingsford v. Merry, 1 H. & N. 503.

The defense in this case must fail for three reasons:

1. The alleged contract that the appellant set up as a defense was not made by a person whom the plaintiff had intrusted with the possession of the goods.

2. The agent did not sell them to the defendant as his own goods, and in his own name as principal.

3. The defendant did not really deal with the agent as and believing him to be the principal in the transaction.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

That defendant dealt with Dickson & Kerr as principals is clear from the whole course of their previous transactions. The fact that Dickson & Kerr also did business as brokers was immaterial unless defendant gave orders to them as such. One who gives an order for goods to A cannot have it transferred by A to B without the buyer's knowledge and consent. And even if it turns out that A was all the time only agent for B as an undisclosed principal, yet B's rights under the contract will be limited by the rights which the buyer has in good faith acquired against A while dealing with him as principal: Frame v. Coal Co., 97 Pa. 309. Whether, therefore, Dickson & Kerr be regarded as dealers on their own account who turned over defendant's order to plaintiff, or as agents of plaintiff, an undisclosed principal, the rights of the parties were fixed by the

original contract growing out of the order, and could not be changed without the introduction of new facts and circumstances. Dickson & Kerr being in debt to defendant on the previous dealings, defendant had the right as against them to get its debt paid and the accounts balanced by ordering goods from them in the regular course of their prior business, and if the goods were sent, received and charged by defendant before knowledge of any other title than that of Dickson & Kerr, the transaction was closed, and defendant was not liable to plaintiff. That is a risk which every undisclosed principal runs as against those who deal with his agent as the real owner.

But if before the goods were received, the defendant had notice of plaintiff's ownership, then defendant was bound to elect either to refuse the goods or to take them as the property of plaintiff, and keeping them would be an assumption of the liability to pay plaintiff for them, whether it be regarded as a ratification of the transfer of the order from Dickson & Kerr or an acknowledgment of the plaintiff as the true principal now disclosed.

The exact date of such notice to defendant and the precise status of the goods and accounts at that time are not clear on the evidence as it now stands. Each party asked a direction for a verdict as matter of law; plaintiff on the ground that the order had been given to him by Dickson & Kerr as brokers, and the goods shipped to and received by defendant, and being plaintiff's property in fact, must be paid for by defendant without reference to its dealings with Dickson & Kerr; defendant on the other hand standing on the state of the case at the time it ordered the goods from Dickson & Kerr without reference to the time of delivery. Both claims were too broad. Defendant was right as to its original status on its order to Dickson & Kerr, and as to all goods received, receipted for or credited to Dickson & Kerr before notice of plaintiff's title. But such notice terminated its rights in that aspect, and as already said it was bound to refuse all goods subsequently delivered or account for them to plaintiff. The time of notice being received, and the deliveries of the goods before and after, were the crucial points of the case. Some of the goods appear to have been received before notice, some admittedly after it, some of the acts and correspondence of defendant look like

ratification of the order as coming directly from defendant to plaintiff, some of them tend to the contrary. These questions therefore should have been sent to the jury.

Judgment reversed and venire de novo awarded.