## Hagan *v.* Carr, Appellant.

*Evidence—Expert witness—Handwriting.*

An expert witness in handwriting may be permitted to use a diagram for the purpose of illustrating the meaning of his testimony where it appears that without such a diagram he could not make his meaning clear; and counsel in addressing the jury may refer to the diagram. The paper is not to be regarded, however, as a piece of evidence in itself, but simply as an aid to the witness and counsel in intelligently presenting to the jury the theory upon which the opinion of the witness is based.

*Promissory notes—Fraud—Evidence.*

In an action upon a promissory note against executors where fraud is

alleged in the making of the note, it is proper to admit in evidence proof that between the date of the note and the death of the testator, plaintiff received and took her interest on a note of much smaller amount, without saying anything about the note in suit.

Argued Jan. 8, 1901.   Appeal, No. 151, Jan. T., 1900, by defendants, from judgment of C. P. No. 2, Phila Co., Dec. T., 1898, No. 84, on verdict for plaintiff, in case of Sarah Ann Hagan v. George Bradford Carr and George Y. Schoch, Executors of John A. English, deceased.  Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Assumpsit on a promissory note for $10,000.   Before Wiltbank, J.

At the trial it appeared that the note in suit was dated March 7, 1895, and purported to have been signed by John A. English.   It appeared that English died on July 30, 1898. Suit was brought on November 29, 1898.   The defense was that the note was a forgery.   Persifor Frazer, an expert in handwriting, testified that in his opinion the note was a forgery, and stated the theory upon which his opinion was based.   Counsel for defendant offered a plan prepared by Dr. Frazer "for the purpose of showing the method by which he reached the conclusions testified to."   Objected to.   Objection sustained, and bill sealed. [1]

Counsel for defendants, before the summing up to the jury, moved for leave to use the freehand drawing exhibited by Persifor Frazer whilst testifying, as indicating a part of his method of working, in order that he might reach a conclusion as to the signature in dispute.

Counsel for plaintiff object to the use of said paper, inasmuch as the same is not competent evidence and has not been admitted.

Objection sustained.   Exception and bill sealed. [2]

When George Y. Schoch was on the stand for his examination in chief, he was asked this question :

" Q. During that period from March 7, 1895, to the time of the death of Mr. English, what, if anything, did she say to you in relation to any claim on a note for $10,000 ? "

Question objected to by Mr. Drayton.   Objection sustained. Exception and bill sealed.

On his re-examination Mr. Schoch testified that he had paid to plaintiff interest on another note than the note in suit.

When Sarah Murphy was on the stand the following offer was made:

"Mr. Drayton: I offer to prove by this witness that in February, 1895, she had a conversation with John A. English, in which he stated that he owed Mrs. Hagan $10,000, and would give her a note for it."

Objected to. Objection overruled. Exception and bill sealed. [4]

Verdict and judgment for plaintiff for $12,350. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions.

*Alex. Simpson, Jr.*, for appellant.

*William Drayton*, for appellee, cited as to the use of the diagram: Com. v. Switzer, 134 Pa. 383; Zube v. Weber, 67 Mich. 52; Hoxie v. Home Ins. Co., 33 Conn. 471; Sullivan v. State, 66 Ala. 48; Cleveland Paper Co. v. Banks, 16 N. W. Repr. 833; Thompson v. Barkley, 27 Pa. 263; Emery v. Christman, 4 Phila. 118.

OPINION BY MR. JUSTICE BROWN, April 1, 1901:

The issue in the court below was as to the genuineness of the signature of John A. English, deceased. As is usual in this class of cases, experts were called, and Dr. Persifor Frazer was examined as such. From reasons which he gave in detail to the jury, his conclusion was, and he so testified, that the signature to the note in controversy was not the handwriting of the person who had signed certain checks submittted to him and bearing the genuine signatures of the deceased. In reaching this conclusion the witness relied upon a theory which he undertook to explain to the court and jury, and very properly used a diagram, simply, quoting his own words, "for the purpose of illustrating" what he meant. It seems, from an examination of his testimony, that, without its use, he could hardly have hoped to make clear to the jury his reasons for his conclusion,

arrived at under his theory.    He clearly had a right to use the diagram as a part of "the reasoning, analysis and investigation by which he had arrived at his opinion : " Act of May 15, 1895, P. L. 69, sec. 3.    It was, however, according to his own testimony, simply a freehand diagram, representing two signatures in a free hand, absolutely of no value as far as the relations of the two names on it were concerned, was a rough sketch without any pretense to accuracy, and had been made "simply for the purposes of illustration."    As a piece of evidence, possessing in itself any light to be thrown upon the only question before the jury, which was whether the deceased had signed the note submitted to them, it was worthless ; and error would have been committed in submitting it to them for their confusion rather than for their enlightenment.    The court said aptly of it as a paper that, in itself, it signified nothing.    The first assignment of error is, therefore, not sustained.    But, as its use by the expert was proper for the reason already stated, how could counsel have intelligently presented his testimony to the jury without it, when its aid was needed and used by the witness without objection, which could not have been fairly made, for the purpose of making clear what he intended to say ?    The denial to counsel of the right to refer to this diagram in his address to the jury was the denial of the right to properly and intelligently discuss the testimony, and that right can never be denied so long as juries are to determine facts.    Courts may and must define the law to them, but cannot give the help, so often needed, to reach the truth from disputed facts, and always found in the words of faithful counsel spoken to them in his client's cause.    When counsel for the defendants, before beginning his address to the jury, moved for leave to use this freehand diagram for the purpose of illustration, it should have been granted, with proper caution from the court that the paper should not be regarded as a piece of evidence to help the jury in determining the single question before them, but simply as assistance to counsel in the effort he was about to make to intelligently discuss the testimony of Dr. Frazer.

The appellee held a note of $2,500 against the deceased, upon which the interest had been regularly paid.    The contention of the appellants is, that they ought to have been permitted to show that, though the appellee, during the lifetime of the

deceased, regularly received her interest on this note, she never said anything about the one in suit until after his death.    If she annually and regularly took her interest on the $2,500 one, without saying anything about the one for $10,000, it would certainly have been proper for the jury to be so informed; for her failure, when she annually received interest on the smaller obligation, to say anything about the larger was a particular in the proofs to be considered by them.    The charge of fraud is here involved, and the door should be opened wide to all evidence tending to throw light on the transaction: Wheeler v. Ahlers, 189 Pa. 139; and the improbability of the appellee's silence about this large note, if she held it, when she received the interest on the small one for several years before decedent's death, ought fairly to have been called to the attention of the jury.    The question, however, that is the subject of the third assignment was properly refused at the time.    Schoch, one of the appellants, called as a witness for the estate, had not testified, when the overruled question was put to him, that he had ever paid Mrs. Hagan any interest between the date of her $10,000 note and the death of English. It was only afterwards, on his re-examination, that he testified, without objection, that he had paid her the interest from March, 1895, to the death of the decedent, and the question which had been disallowed might then have been repeated to him; but it was not and the third assignment is overruled.

As we have sustained the second assignment and must send the case back for another trial, we need not pass upon the questions raised by the fourth and fifth; otherwise they would be considered and properly disposed of.    If Mary Murphy was improperly allowed to testify in rebuttal, not only to the surprise, but to the prejudice of the appellants, they will now have full opportunity to contradict her, if she shall again be called as a mistaken or untruthful witness against them.

The judgment is reversed and a venire facias de novo awarded.