76 So.2d 553 (1954)
Mrs. Dorothy Whitehead REDMOND, Plaintiff-Appellee,
v.
OUACHITA COCA-COLA BOTTLING COMPANY, Inc., Defendant-Appellant.
No. 8159.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1954.
Rehearing Denied January 4, 1955.
Writ of Certiorari Denied February 14, 1955.
Theus, Grisham, Davis & Leigh, Monroe, for appellant.
George Fink and J. H. Dormon, Monroe, for appellee.
HARDY, Judge.
This is a suit by plaintiff as the duly qualified natural tutrix of her minor son for the recovery of damages allegedly resulting from the explosion of a bottle of Coca-Cola which caused the loss of the child's right eye.
From a judgment in favor of plaintiff the defendant, Ouachita Coca-Cola Bottling Company, Inc., has appealed.
On July 4, 1952, shortly before 12:00 noon plaintiff's minor son, who was at the time some two years nine months of age, picked up a bottle of Coca Cola from a six-bottle carton which had been placed on the porch of a dwelling house at No. 115 Pear Street in the City of West Monroe, immediately outside the bedroom of the apartment which was at the time occupied by the Redmond family. It is alleged that as the little boy picked up the bottle, without striking it against any object, the bottle exploded in his hand and a fragment of glass therefrom lodged in his right eye, *554 necessitating the removal of that member. On the basis of these alleged facts plaintiff pleaded the doctrine of res ipsa loquitur. By adequate and consistent testimony plaintiff established the fact that there was nothing in the handling of the Coca-Cola bottles after the same left the custody and control of the defendant which would relieve defendant of assuming the burden imposed by the doctrine of res ipsa loquitur. The application of this doctrine is strenuously resisted by counsel for defendant, which, nevertheless, attempted to meet the issue, and, in doing so, was forced to rely upon the testimony of an employee of its plant bearing upon the exercise of the highest possible degree of care in its bottling operation and upon the testimony of expert witnesses with reference to the cause of breakage of the particular bottle involved in the accident, which testimony in the instant case has been unusually comprehensive and convincing.
Sometime after the occurrence of the accident plaintiff sued for and was granted a judgment of divorce from her husband, Richard J. Redmond, father of the minor child, which judgment also granted plaintiff the permanent care, custody and control of the said minor. Responsive to appropriate proceedings plaintiff was later appointed, qualified and was confirmed as natural tutrix of the said minor.
We proceed first to a discussion of the uncontroverted facts as established by the record. The Redmond family occupied an apartment in the dwelling house owned by one Mrs. Kincaid, who also maintained and occupied an apartment therein. The house faced west and the Redmond apartment was located on the north side. A small porch extended across a portion of the front of the house from the south side thereof to the wall of the bedroom of the Redmond apartment on the north. From the bedroom a door gave access to the porch and near the door a flight of steps led from the porch to the ground. The location of the door, as best we can determine, was approximately, in the center of the north end of the porch, and the position of the steps left a small area of porch space in the angle between the steps and the wall of the bedroom to the north. On the day in question a number of friends were visiting the Redmonds, a Mr. and Mrs. W. J. Skipper, Mrs. Delma Cupit Lett (who at the time of the accident was Miss Delma Cupit) and a sixteen-year old youth, Dewey Rudolph Faircloth. Sometime about 11:00 or 11:30 A.M. young Faircloth, accompanied by the Redmond children, little Richard James Redmond, Jr., and his four-year old sister, Wanda Joyce, went to Bill Barnett's garage and purchased two six-bottle cartons of Coca-Cola, returned to the house and placed the cartons on the porch. Mrs. Redmond, who was engaged in preparing lunch for her family and friends, immediately placed one of the cartons in the icebox and left the other on the porch. Skipper, young Faircloth and Mr. Redmond left in Skipper's car for the purpose of procuring some ice, and these three parties were absent at the time of the accident, returning only a few minutes thereafter. The three women, plaintiff, Mrs. Skipper and Miss Cupit, were in the Redmond bedroom where Mrs. Skipper and Miss Cupit were sitting on the bed, which was placed in the northwest corner of the room, and Mrs. Redmond was sitting in a chair apparently somewhat in front of the bed and toward the door leading onto the porch. The two children, according to plaintiff's testimony, were "just sitting there on the porch" and "they wasn't doing anything," until the little boy walked over to the carton and picked up a bottle of Coca-Cola. After the explosion or bursting of the bottle, the child screamed, and Mrs. Skipper rushed out of the room, picked him up, and held him in her arms. Very shortly thereafter the men returned to the house and all parties were loaded into the automobile and driven to the Wright-Bendel Clinic where the child's serious injury was given treatment. It is further established that Mrs. Redmond, at some later time, swept up the fragments of the bottle which were scattered about the porch and delivered the same to her counsel, who, in turn, transmitted them to counsel for the defendant company.
*555 The above are, in our opinion, the pertinent facts which were established without conflict. We now proceed to a discussion of those controverted facts which are material to a consideration of the case. Of the three women who were present in the bedroom at the time of the accident Miss Cupit did not observe the occurrence. We note that the opinion of the district judge refers to the testimony of Mrs. Redmond and Mrs. Skipper on the point that they saw the child, Richard Redmond, pick up the bottle and saw it explode. We do not so construe the testimony of Mrs. Skipper, for, on direct examination by plaintiff's counsel, the following exchange of questions and answers took place:
"Q. I say where was the bottle of coca cola? On the front porch you said? A. Yes, sir.
"Q. Did you see her son Richard pick up that bottle of Coca-Cola? A. Yes, I did.
"Q. And what happened when he picked it up? A. The Coca-Cola exploded in his hand.
"Q. Was this bottle one of the bottles in a six bottle carton? A. That's right.
"Q. What caused your attention to be diverted to the son? A. When the child screamed.

"Q. Was the bottle still in his hand at the time when you looked around? A. Well, no; it had exploded then.

Went every which way."
The only possible conclusion which can be reached in view of the emphasized portion of the above testimony is that Mrs. Skipper was not looking and therefore did not see the child until her attention was attracted by his scream, whereupon she "looked around", after the occurrence of the explosion. It is true that later in her testimony she was equally positive that she saw the little boy pick up the bottle, as is evidenced by the following:
"Q. Are you sure that the little boy didn't drop that bottle before it exploded? A. I know he didn't drop the bottle; I saw him when he picked it up.
"Q. You saw him when he picked it up and you saw and heard the explosion? A. Yes, I did."
Because of the above inconsistency we think the so-called "eye witness testimony" of Mrs. Skipper must be disregarded. The principle which is applicable in this connection was clearly stated in an opinion by Judge Janvier in Piacun v. Louisiana Coca-Cola Bottling Co., La.App., 33 So.2d 421, 424, as follows:
"We therefore pass on to a consideration of the evidence tendered on behalf of the plaintiff and we give to the details of that evidence careful scrutiny because we realize, as has so often been said, that in a case of this kind the bottler is ordinarily unable to produce any evidence whatever touching upon the actual occurrence. This rule, that in a case such as this is, the evidence of plaintiff must be carefully scrutinized, is well established. In Russo v. Louisiana Coca-Cola Bottling Co., La.App., 161 So. 909, 910, we said: `* * * In considering whether such an accident actually occurred, it is well to bear in mind that the manufacturer necessarily can have no means of disproving by eyewitnesses that the occurrence alleged actually took place. In such circumstances, plaintiff's evidence should be most carefully scrutinized * * *.'"
After careful study of the testimony of Mrs. Redmond, the child's mother and plaintiff herein, we think she has failed to present a convincing and accurate location of the actual point of occurrence of the accident, but, as best we can determine, she located the carton of Coca-Colas at some point in the area between the porch steps and the south wall of the bedroom, perhaps somewhat nearer the steps. The testimony of Mrs. Skipper appears to place the location of the carton considerably nearer the east boundary of the porch, that is, away *556 from the steps and toward the wall and door of the Kincaid apartment. We think the significance of this inconsistency in testimony is of more than passing importance, because it is obvious from the recital of the established facts that Mrs. Skipper, looking around from her place on the bed, could not have seen the area of the accident if the same occurred at a point between the steps and the wall of the bedroom, whereas Mrs. Redmond, from her position in a chair in front of the door, could not readily have observed the accident if it occurred at a point near the wall to the east or at the back of the porch from the steps. The testimony of young Faircloth gives no assistance in the resolution of this point since he was not specific as to the location on the porch where he had placed the cartons, and, further, he testified that on returning to the house shortly after the accident both cartons remained on the porch where he had placed them, this being squarely contradictory of Mrs. Redmond's testimony that she had removed one of the cartons.
Turning to a consideration of the defenses urged we find that counsel for defendant relies first, upon the asserted proposition of law that the doctrine of res ipsa loquitur does not apply in the instant case, and, second, upon the contention that defendant has established as a fact that the Coca-Cola bottle here concerned did not explode as the result of an internal force but was broken by the application of external force. We proceed to a discussion of these points, seriatim.
We find no merit in the argument that the doctrine of res ipsa loquitur is inapplicable under the facts of the instant case. It is too well established by the jurisprudence of this State to admit of argument that the doctrine is called into application by the occurrence of an accident resulting from an agency or instrumentality of which the defendant has had the custody and control, which accident is of a nature that does not customarily occur in the absence of negligence, and the exact cause of which, under the circumstances, cannot be readily ascertained by a plaintiff. These three elements were present in the instant case and upon proof which, as we have related, was made by plaintiff, that the bottle was not improperly handled after it left the possession of the defendant company, plaintiff has established a prima facie case of negligence and thereupon the doctrine was properly invoked. We think any dispute on this point was conclusively settled by the pronouncement and application of the rule as elucidated in the able and exhaustive development of the opinion of Mr. Chief Justice Fournet in the case of Ortego v. Nehi Bottling Company, Inc., 199 La. 599, 6 So.2d 677.
It is our opinion that this case must ultimately turn upon the resolution of a question of fact which may be stated as follows:
Did the bottle of Coca-Cola which was the offending instrumentality burst or explode as the result of the application of internal or external force?
In the instant case plaintiff must rely upon her testimony for, as we have above stated, she must be considered as the only witness to the actual occurrence. Accepting this testimony at face value it is indicated that plaintiff saw little Richard pick up the bottle of Coca-Cola from the carton resting on the floor of the porch and saw it explode in his hand. Plaintiff testified that Richard did not hit the bottle or strike it against any other object. For the reason hereinabove asserted we cannot consider the testimony of Mrs. Skipper as corroborating that of plaintiff, but, on the contrary, it must be construed as reflecting some doubt as to the accuracy thereof. In this case there are no corroborating circumstances to be gleaned from a consideration of the physical surroundings.
As opposed to the testimony of plaintiff defendant, perforce, has relied upon first, the testimony of an employee with respect to the custom of careful and prudent operation of its bottling plant, with particular reference, of course, as to the checking of internal pressure in the operation of filling and capping; and, second, the testimony *557 of expert witnesses relating to the cause of the bursting of the bottle.
In beginning our analysis of the testimony of defendant's witnesses we comment upon the fact that actions against beverage bottling concerns for the most part fall into two specific categories: (1) Suits for damages resulting from the presence in the bottled beverage of foreign matter or deleterious substances, and (2) Suits for injuries resulting from the bursting, explosion or some other violent disintegration of the bottle containing the beverage.
In the consideration of cases falling within the first category the appellate courts of the State have been called upon to evaluate the weight of testimony with reference to the conduct of the bottling process and operation as related to the facts of each individual case. Almost invariably the testimony of plant officials and employees of the defendant bottler has established that in the ordinary course of operations, and because of rigid systems of inspection, the inclusion of foreign or deleterious material is a practical impossibility. Despite the apparently convincing effect of such testimony our courts have been persuaded to an opposite conclusion, impelled by recognition of the fact that even the most exacting precautions are fallible when they are dependent upon either human or mechanical agencies or instrumentalities, or both. In other words, our appellate courts have, in effect, declared so many times as to obviate the necessity of citation that "It couldn't happen, but it did." The only logical reason which could support such a conclusion lies in the ultimate recognition that both man and machinery are fallible. In the instant case this possibility is frankly recognized and conceded by defendant's witness, Mr. J. W. Young, plant superintendent of defendant's bottling company, who answered a question put to him on cross examination with a question of his own as follows:
"Have you ever seen any piece of machinerywould anybody get up here and tell you that any piece of machinery whether it is in a paper mill or bottling plant was absolutely 100% perfect?"
As in the deleterious substance cases where the principle of possible, though rare, defection in human and mechanical inspection processes is recognized, we would be constrained to accept as completely unconvincing the probative effect of that testimony which would attempt to justify the conclusion that a bottle could not explode because of the precautions taken in processes of filling, carbonating, and in testing and inspecting the internal pressure of each filled bottle both before and after capping. Upon the basis of such testimony standing alone we would not be justified in the instant case in finding that defendant had discharged the burden of proving freedom from negligence.
But the above mentioned nature and type of testimony is far from standing alone in the instant case for, on the contrary, it is buttressed and supported by the strongest expert testimony that could reasonably be conceived.
Defendant tendered as witnesses on trial of the case Dr. W. H. Beisler of Gainesville, Florida, and Mr. Paul H. Horton of Dallas, Texas. The testimony of these gentlemen was supported by a report, filed by way of a deposition in accordance with stipulation of counsel, by Mr. H. E. Fulcher, a Professor of Physics at Davidson College, Davidson, North Carolina. Unfortunately, measure by its effect upon the length of this opinion, we think it necessary to set forth the qualifications and the significant details of the testimony of these expert witnesses.
Dr. Beisler testified that he was presently head Professor of Chemical Engineering at the University of Florida, a holder of degrees of Bachelor and Master of Science from Rutgers, and Doctor of Science from Princeton, which degrees were awarded respectively in 1918, 1919 and 1922; that he had specialized in Chemistry at the University of Florida since 1922 and had been head of the department since 1939; that he had made a particular study of the properties and propensities of glass and glass *558 products, which had concerned work, study and numerous experiments over a period of some years, with particular reference to the tensile strength and to the causes and effects of fractures or breaking of bottles. The fragments of the bottle which was the cause of the accident here concerned were re-assembled by Dr. Beisler, who testified that the quality of the glass therein was completely satisfactory and that the bottle itself gave evidence of freedom from any appreciable indication of any nature of imperfection. The witness identified the bottle as having been made by the Chattanooga Glass Company in mold eleven in the year 1951. From his reconstruction of the bottle and the subsequent meticulous examination, Dr. Beisler testified that the fracture pattern of the bottle conclusively indicated in his opinion that it was broken by external impact. Without reciting all the details upon which the conclusion was based, we think it important to observe that the witness pointed out a "bruised area" which he fixed as the point of external impact, and located on the corresponding portion of the glass inside the bottle a "cone of percussion" produced by the "scaling-off of particles of glass * * * very much like a shell in appearance," which "cone of percussion" was "very evident in this bottle."
The witness further pointed out that the lower part of the bottle was intact with a "horn * * * attached and still in place in the lower half of the bottle." Summing up, the witness stated:
"* * * all of these characteristics are what have convinced me that this is definitely a break that resulted from striking the bottle against some hard object."
The conclusions expressed by Dr. Beisler were confirmed in every particular by Mr. Paul H. Horton, a graduate chemist with the degree of Bachelor of Science in Chemistry from the University of Oklahoma in 1935, who has actively practiced his profession since that date, and who has been a member of the American Chemical Society since 1933 and a fellow of the American Institute of Chemists since 1938. Mr. Horton is employed by Southwestern Laboratories of Dallas in the capacity of chemist. He testified that he became interested in the study of glass, its qualities and properties while at the University of Oklahoma in 1934 and has continued that study since that time. Mr. Horton also came into possession of the offending Coca-Cola bottle in its fragmentary condition, reassembled the same in the laboratory of his company, and subjected it to a thorough and detailed examination seeking, by the use of a polariscope, to detect internal strains, lack of proper annealing, and by other examinations to determine the cause of the explosion or breaking of the bottle. The conclusion of the witness was stated as follows:
"The bottle was broken either by being struck with or struck against some hard object. I base that conclusion on the shape of the fracture in this particular spot and the shelling-off in the appearance of a percussion cone in this area."
In support of the conclusion as above expressed this witness proceeded to identify the point of impact, and, after testifying that he found no evidence of internal strains nor imperfections of any significance, expressed the conclusion that prior to its breakage the bottle was perfectly sound and normal in every respect.
Both Dr. Beisler and Mr. Horton related in detail the experiments they had performed on a number of bottles, selected at random from defendant's plant during the course of bottling operations, with reference to pressure tests. Additional experiments for the determination of internal pressure present in random bottles of Coca-Cola, both before and after agitation of the contents and experiments for the determination of the point of pressure resulting in breakage, were conducted under the eye of the court on trial of the case.
Still another experiment which was performed by the experts was designed to demonstrate the point of pressure at which the release of gas and liquid was *559 effected by leakage around the cap of the bottle.
Certain definite conclusions were demonstrated by these experiments, among which we enumerate briefly the fact that out of some 27 bottles tested in and out of court, to determine the point of breakage from application of internal pressure, the minimum pressure required was 310 and the maximum was 1,000 pounds per square inch, and the overall average was fixed at 775 pounds per square inch, more or less. The normal internal pressure resulting from the containment of a carbonated beverage was shown to vary from a minimum of 36 pounds per square inch before agitation to 55 pounds per square inch after agitation of the contents. Another experiment determined that upon the building up of internal pressure the release of the bottle cap on three separate bottles was effected at pressures varying from 190 to 220 pounds per square inch.
As the result of the showing made in the experiments which are above briefly outlined, it is evident that defendant has established the high degree of improbability of the bursting or explosion of a bottle of Coca-Cola from the application or development of internal force. On the basis of the results demonstrated, allowing for variance due to increase of pressure proportionately related to increases in the temperature of the liquid, it must be concluded that the margin of safety should be computed on the basis of a ratio of not less than three to one. In other words, on the basis of an extreme assumption of a temperature of a bottle of Coca-Cola at 100 degrees F., with a corresponding pressure before agitation of 70 pounds per square inch and 90 pounds per square inch after agitation, the safety factor, on the basis of the experiments conducted, and accepting the least resistant bottle tested as yielding to a pressure of 310 pounds, indicates a margin of 220 pounds. Additionally, it is to be observed that the cap would have yielded and thereby permitted an escape of excess internal pressure upon the application of internal force of 220 pounds.
The above impressive array of scientific conclusions would appear to establish a sound basis for the opinion that no bottle of Coca-Cola could explode or burst as the result of abnormal internal pressure, but we know that such a conclusion would be false because, as evidenced by a number of cases in this and other jurisdictions, courts have concluded on the basis of established facts that some Coca-Cola bottles do explode or burst as the result of internal pressure. It is apparent that the reason for the difference between an apparently sound scientific conclusion and one supported by established facts is due to elements and factors which would not ordinarily be demonstrable in the course of even exceptionally thorough scientific experiments, for example, a flaw or weakness in a particular bottle, either resulting from faulty manufacture or the wear and tear of continuous re-use. For this reason we are impelled to reject as inconclusive the result of the experiments which would lead to the erroneous conclusion that Coca-Cola bottles cannot and do not burst or explode as the result of internal pressure.
But here we wish to point out the very definite and clear-cut issue which is presented for our determination by and through the development of expert testimony in the instant case. The experts, despite the conduct of general experiments, were not concerned in this case with the attempt to establish the conclusion that Coca-Cola bottles do not burst from internal pressure but rather they were concerned primarily, or we may truly say exclusively, with the effort to prove that this particular bottle did not burst from internal pressure. In this distinction there is found the crux of the case.
On this point we are convinced that the experts have sustained and satisfactorily discharged the burden imposed upon them. From the preserved fragments of the bottle the same was in *560 large measure reconstructed, to such extent that the expert witnesses, without collaboration in their several examinations, concluded that the bottle burst as the result of the application of external force. Their reasons for this conclusion have been soundly established.
In addition to the testimony of Dr. Beisler and Mr. Horton, as we have previously commented, there was introduced a report of the findings of Mr. H. E. Fulcher, which was admitted in the nature of a deposition by stipulation of counsel. We quote the brief report in its entirety as follows:
"Findings of the pieces of coca-cola bottle sent me by the Southwestern Laboratories, Dallas, Texas.
1. Bottle carries the identification 11 C 51 on side and Monroe, La. on bottom. This means that the mold number is 11, manufactured by Chatt. Glass works in the year 1951, for the Monroe Coca-Cola Bottling Co. of La.
2. Chain wear on the bottom shows that the bottle was filled more than once, probably three to ten times.
3. Thicknesses, color and other physical conditions show that the Coca-Cola bottle was a standard bottle.
4. The two horns or projections on the bottom piece are characteristics of breaking by impact.
5. The shelling off on the inside of the pieces of the bottle definitely show that the bottle was broken by impact.
6. The cone of percussion shows that the bottle struck some hard object or was struck by a hard object that was not pointed but had a diameter larger than one centimeter.
7. The cone of percussion is on a rib of the Coca-Cola bottle, about four inches from the bottom to the left of the marking 11 C 51.
8. All pieces of the Coca-Cola bottle were not sent. The four pieces that were sent were sufficient to construct the height of the bottle. The large bottom piece and the piece that fits this bottom piece bear the inside shelling or locate the cone of percussion."
It is readily to be perceived in the instant case that we are confronted with a classic example of the conflict between lay and expert testimony. Recapitulating, we note that in the final analysis plaintiff must rely upon the testimony of one eyewitness without benefit of scientific testimony, whereas defendant, in the absence of any eyewitnesses, is forced to rely exclusively upon the expert opinion evidence of three men of science.
In the effort to obtain all possible light on this conflict we have hopefully examined numerous "bottle" cases, primarily those involving the alleged explosion of Coca-Cola bottles, some of which are annotated in 65 C.J.S., Negligence, § 243, page 1078. As might have been expected, a number of these cases appear to have involved the necessity for reliance in greater or less degree upon expert testimony, but, unfortunately, the opinions do not discuss such testimony in any considerable detail. Nevertheless, we summarize some of the findings for what they may be worth.
In Soter v. Griesedieck Western Brewery Co., 1948, 200 Okl. 302, 193 P.2d 575, 4 A.L.R.2d 458, a denial of recovery by plaintiff was affirmed. The court held that the testimony of a chemist on behalf of plaintiff as to the defective condition of the bottle was not sufficient in view of the fact that the witness had not seen the bottle nor tested its contents and was otherwise lacking in a foundation for his testimony.
In Seeraty v. Philadelphia Coca-Cola Bottling Company, Inc., 1952, 198 F.2d 264, 265, the United States Court of Appeals for the Third Circuit in affirming a judgment rejecting a plaintiff's demands made the following observation:

*561 "The hotly controverted issue before the jury was whether the bottle simply exploded at the instant plaintiff opened the cooler or whether it was caused to break, as defendant's expert testified, due to a blow from the outside. A glass expert testified to support the plaintiff's theory. With all the evidence before it the jury preferred to reject the plaintiff's version of the accident. The record fully supports their finding for the defendant."
We find of particular interest, by reason of the brief comment below noted with reference to the expert testimony, the case of Hoffing v. Coca-Cola Bottling Co., 1948, 87 Cal.App.2d 371, 197 P.2d 56, 57. A judgment for plaintiff was affirmed. In the course of its opinion the court made the following analysis:
"Expert witnesses testified concerning the manufacture of glass bottles and explained several standard methods for testing glass such as visual examination, hammer test, polariscope test, thermal test and pressure test. There was evidence that such tests are generally employed by bottle manufacturers, and while not infallible, reveal various defects present at that time. Plaintiff's expert, Dr. Benson, expressed an opinion that the explosion was probably caused by a defect in the bottle, perhaps accompanied by excessive pressure inside the bottle; that a mechanical or thermal strain or defect could arise either during the process of bottle manufacture or could be later acquired through handling, scratching, clipping, bumping, bruising, and general use. Two expert witnesses called by the defendant stated that no opinion could be expressed as to the cause of the explosion from the facts given. One of such experts, however, stated an opinion that the explosion was caused by outward force originating from inside the bottle; further, that fatigue from use would be a cause for explosion, and that the thermal shock test would probably reveal weakness in the bottle due to fatigue."
We have found a number of cases in which the general testimony with reference to pressure, similar to that which we have above discussed in detail, indicated that a Coca-Cola bottle was not susceptible to breakage from internal pressure. Typical of these cases is the following expression from the opinion of the court in Davis v. Coca-Cola Bottling Company of Asheville, 1947, 228 N.C. 32, 44 S.E.2d 337, 338:
"Defendant's evidence tended to show that the bottles were of uniform size and shape, and were carefully inspected before filling; that the bottling operation was carried on by defendant in a careful manner and with approved machinery and in accord with the best methods; that the carbonated water was infused by machinery to the regulated pressure of 48 pounds to the square inch; that it would require from 440 to 700 pounds pressure to cause an internal explosion in a Coca-Cola bottle; and that the description of the breaking and its effect on the bottles (caps and bottoms intact) as testified, would indicate the breaking of the bottles was due to some other or outside cause and not to defective bottles or overcharge."
With reference to the general function and purpose of expert witnesses, we think an observation by the United States District Court for the Western District of Pennsylvania in the case of Sanders v. Glenshaw Glass Co., 1952, 108 F.Supp. 528, 531 is pertinent and we quote from the opinion as follows:
"* * * plaintiffs complain of the admissions in evidence of the testimony of defendant's fracture experts and the exhibits which they used to explain their opinions. We find no merit in these reasons. `The use of expert witnesses in the trials of cases has long been recognized and the area of their testimonial service is being constantly extended. * * * "Their proper office is to instruct the court *562 and jury in matters so far removed from the ordinary pursuits of life, that accurate knowledge of them can only be acquired by continued study and experience; the purpose is to enable both court and jury to judge intelligently of the force and application of the facts introduced in evidence, as they would have been able to do if they had been persons properly instructed upon the subjects involved. Expert testimony, owing perhaps to the greater extent of recent scientific research, is much more frequently resorted to than formerly."' Commonwealth v. Fugmann, 1938, 330 Pa. 4, 25, 198 A. 99, 110.
"Without the illustrative use of the fractured bottles and the other exhibits the experts could hardly have hoped to make clear to the jury the reasons for their conclusions. The physical exhibits were a necessary part of the `reasoning, analysis, and investigation,' by which they arrived at their opinions. Without these exhibits to compare and consider we are persuaded the jury could not have understood the opinions of the experts. See Hagan v. Carr, 1901, 198 Pa. 606, 48 A. 688; Hoffman v. Bloomsburg, & S. R. Co., 1891, 143 Pa. 503, 22 A. 823. See also cases cited from other jurisdictions in Kohlhagen v. Cardwell, 93 Or. 610, 184 P. 261, 8 A.L.R. [11] 18, State of Missouri v. Allison, 330 Mo. 773, 51 S.W.2d 51, 85 A.L.R. [471] 479."
Adverting to Louisiana cases involving alleged bursting or explosion of bottles, we particularly note Auzene v. Gulf Public Service Co., La.App., First Circuit, 188 So. 512 (Writs denied); Lanza v. De Ridder Coca-Cola Bottling Co., La.App., First Circuit, 3 So.2d 217; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 677; and Johnson v. Louisiana Coca-Cola Bottling Co., La.App., Orleans, 63 So.2d 459.
In the Auzene case recovery by plaintiff was affirmed and it is evident from the opinion that while the court was convinced by the testimony of defendant's plant officials and employees as to the care used in defendant's bottling process, it was entirely unconvinced that the bottled beverage could not and did not explode. We point out that the cited case did not involve the consideration of definite testimony relating to the cause of explosion of the particular bottle involved.
In the Lanza case recovery by plaintiff was affirmed and again it is noted that defendant's testimony appeared to be limited to details of the defendant's bottling process as testified by the manager of defendant's bottling plant. It is further observed that the court commented on the fact that:
"The bottle in this case burst into fragments and we do not see where the defendant could have secured much information from an examination of these fragments to assist it in ascertaining the cause of the explosion. In any event, it is shown that plaintiff did not preserve the fragments of the broken bottle and of course could not produce them." [3 So.2d 218.]
In the Ortego case the testimony on behalf of defendant was again restricted to a showing of the care used in the conduct of the bottling operations with relation to the reduction of pressure, inspecting in testing, etc. The court very appropriately commented:
"Despite all of this evidence, the fact remains that the bottle did explode." [199 La. 599, 6 So.2d 677.]
But, again, we point out the fact that the defendant in the above cited case relied upon the impossible establishment of the proposition that a bottle of its beverage could not explode, which could not stand against the establishment of the ultimate fact, as above observed in the court's opinion, that a particular bottle did explode.
Finally, we undertake consideration of the Johnson v. Louisiana Coca-Cola Bottling Company case, supra, insofar as the testimony therein adduced and the resolution of the court from the same bears upon the issue here under consideration. The excellent opinion of Judge Regan of the Orleans Court analyzed in some detail the *563 expert testimony of Dr. Oscar G. Fryer, a learned professor of physics. This analysis concerned substantially the same character and nature of testimony and the same conclusions with reference to square inch pressure as we have above discussed in connection with this case. However, this testimony was confined to generalizations and, so far as the opinion discloses, there was no testimony with reference to a particular bottle. Even so, the question was fraught with grave doubt, as evidenced in the brief written concurrence of Judge Janvier.
In the instant case we have not only been accorded the benefit of clear and convincing testimony with reference to the exceedingly high degree of care exercised in the bottling operations of defendant's plant, but we have been furnished with much persuasive testimony of a general nature based upon scientific deductions which establishes beyond peradventure of a doubt the fact that the bursting of a bottle of Coca-Cola as the result of internal pressure is an occurrence almost beyond the realm of possibility itself. If defendant's proof stopped at this point, although we might be afflicted by grave doubts, as was the Orleans Court in the Johnson case, we would, nevertheless feel impelled to assert the conclusion that this evidence was insufficient to justify a finding of reversible error. But to our minds, sensible as we are of the tragic effects of the accident, and distasteful though the conclusion may be from the standpoint of humanitarian considerations, the proof in the instant case has gone far beyond that which has been established in many of the cases above enumerated, and, in our opinion, effectively preponderates against plaintiff's contention.
It may be urged that in reaching this conclusion we have overlooked the effect of the unimpeached testimony of plaintiff relating to the occurrence of the accident, but this is not so. In the final analysis we can only conclude that she has been honestly mistaken in her recapitulation of the facts concerning the occurrence of the accident. It is established by the testimony that Mrs. Redmond was in a state of severe shock following the accident and that it was necessary to give her medical attention. It is not therefore a circumstance to arouse wonder that her memory of the accident is subject to question.
The conflict between personal and expert scientific testimony is not new to us for it somewhat frequently arises in the field of workmen's compensation claims. These actions are favored above all other classes, both by statute and in our jurisprudence with respect to the liberality of interpretation of evidence, relaxation of technical rules and the according of the benefit of doubt, all in favor of the claimant. But even in these cases all the appellate courts of this state have reiterated, time and again, the pronouncement that a claim must be established with certainty and not by a showing of probability. And in these cases on occasions of conflict between lay and expert medical opinion testimony the courts have repeatedly held that where there is no conflict in the expert testimony lay testimony will not be taken into consideration. Waldrup v. Consolidated Underwriters, La. App., 64 So.2d 468; Carter v. Consolidated Underwriters, La.App., 62 So.2d 682; Maricelli v. Standard Acc. Ins. Co., La.App., 57 So.2d 926; Sellers v. T. J. Moss Tie Co., La.App., 56 So.2d 878; and Fee v. Travelers Insurance Co., La.App., 193 So. 381.
In the instant case there is not only an absence of conflict in the expert testimony but there is a convincing unanimity, both of opinion and of the reasons upon which such opinion is predicated. As opposed to this there remains only the testimony of the plaintiff herself which is subject to the criticism of uncertainty and inconsistency as above noted. Under these circumstances there exists in our minds no question as to the appropriate conclusion.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of defendant, Ouachita Coca-Cola Bottling Company, rejecting the demands of plaintiff and dismissing her suit.