HARDY, Judge.
This is an action ex delicto in which •plaintiff, Brown, seeks recovery of damages for personal injuries. Bituminous Casualty ■Company, compensation insurer of Brown’s •employer, joined as a party plaintiff, praying for judgment to the extent of amounts paid for compensation and medical ex"penses. Named as defendants are Cub Beverage Company, manufacturer and bot■;tler of a soft drink known as “Mr. Cola”, and its liability insurer, Hardware Mutual Casualty Company. From judgment in favor of plaintiff Brown in the principal sum of $2,970.00, and in favor of plaintiff, Bituminous Casualty Company, in the principal sum of $1,987.87, the defendants have appealed.
The facts established without any substantial dispute are that plaintiff Brown, an employee of J. C. Prunty, d/b/a Bossier Ice & Food Company in Bossier City, Louisiana, received an injury to his right wrist caused by the explosion of a bottle of “Mr. Cola”. The accident occurred about 2:00 P.M. on June 14, 1962, when Brown was engaged in placing bottles of the specified beverage in a cooler box which contained at the time a small quantity of ice and some ice water. Plaintiff had removed a carton of “Mr. Cola” from a service shelf and as he was placing the third or fourth bottle from said carton in the ice box, the bottle exploded .in his hand, severely cutting his right wrist and causing injuries to the flexor tendons.
Plaintiff pleaded the doctrine of res ipsa loquitur, and, since the applicability of the doctrine in the instant case has been conceded, no issue is presented with respect to the consideration thereof.
The burden of the defense presented on this appeal is, first, that defendants have purged themselves of the implication of negligence by proving that the bottles were not defective, and, second, that plaintiff Brown was guilty of contributory negligence in attempting to force the bottle of carbonated beverage, cap down, into the cooler.
The attempted defense of contributory negligence may be readily disposed. The record does not sustain the contention that the offending bottle was roughly or carelessly handled by the plaintiff, nor that he was attempting to force the bottle into the ice box. Nor is it shown that the mere act of inverting the bottle in connection with placing it in the cooler had any bearing *607 upon or connection with the resultant explosion.
In connection with the claim that defendants have exonerated themselves from any charge of negligence, the testimony of the President of defendant, Cub Beverage Company, and the Vice-President in charge of production of the Coca Cola Bottling Company of Shreveport, is relied upon. The testimony of these witnesses is almost identical with the testimony that has been offered by other officials of bottling enterprises in numerous cases in our jurisprudence relating to the same nature of action. The effect of this testimony relates to the extreme care exercised in connection with the testing of bottles used in the bottling process. The testimony in the instant case is not comparable in extent or quality with that which has been tendered in other cases in which the testimony of officials in charge of the bottling process has been strongly reinforced and implemented by that of exceptionally qualified experts in the field of chemical engineering. In the case of Redmond v. Ouachita Coca-Cola Bottling Company (2nd Cir.,1954, writs denied), 76 So.2d 553, this court carefully examined the extensive and thoroughly detailed scientific testimony of two experts exceptionally well-qualified in the field of chemical engineering, who were particularly versed in the study of the properties and propensities of glass and glass products. The opinion commented upon the effect of this testimony as follows:
“The above impressive array of scientific conclusions would appear to establish a sound basis for the opinion that no bottle of Coca-Cola could explode or burst as the result of abnormal internal pressure, but we know that such a conclusion would be false because, as evidenced by a number of cases in this and other jurisdiction, courts have concluded on the basis of established facts that some Coca-Cola bottles do explode or burst as the result of internal pressure. It is apparent that the reason for the difference between an apparently sound scientific conclusion and one supported by established facts is due to elements and factors which would not ordinarily be demonstrable in the course of even exceptionally thorough scientific experiments, for example, a flaw or weakness-in a particular bottle, either resulting, from faulty manufacture or the wear and tear of continuous re-use. For this-reason we are impelled to reject as-inconclusive the result of the experiments which would lead to the erroneous conclusion that Coca-Cola bottles cannot and do not burst or explode as the result of internal pressure.”
The gist of the above statement was more concisely set forth in another expression of the opinion as follows:
“In other words, our appellate courts have, in effect, declared so many times as to obviate the necessity of citation that ‘It couldn’t happen, but it did.’ ”
A similar expression is found in the comparatively recent case of Gabriel v. Royal Products Division of Washington Products, Inc. (4th Cir.,1964), 159 So.2d 384.
The more specific contention made in the-instant case is that the immediate cause of' the explosion was thermal shock resulting-from removal of a bottle which had been subjected to “heat and sunlight” to a wet: cooler box without precooling. A similar contention was made in the case of Meyers v. Alexandria Coca-Cola Bottling Company (1st Cir., 1942), La.App., 8 So.2d 737, and the opinion commented:
“ * * * there is nothing to show that a bottle will explode if taken from a normal temperature and put in an ice box. If such were the case, the bottling company should certainly take some steps to warn their customers and users - of their products of this danger, or else provide some protection in the bottling process to eliminate this danger.. If the bottles have to be gradually cool— *608 ed, the customer or user is entitled to have some warning of that fact.”
In the case before us, the defendants failed to establish the fact that the bottles on the service shelf were exposed to excessive heat or sunlight. We point out a further weakness in the contention by reason of the fact that the bottle exploded while it was still in the hand of the plaintiff and quite obviously before any unusual change of temperature could have been effected. Additionally, it is a matter of common knowledge that the cooling of bottled soft drinks is ordinarily accomplished without any regard to change in temperature. Finally, it is reasonable to conclude that thermal change would not of itself cause an explosion in the absence of some weakness in the bottle or defect in the bottling process.
We have carefully reviewed all of the cases in Louisiana jurisprudence involving the question of liability resulting from the explosion of bottles and have failed to find any pronouncement which would justify the acceptance of the defense presented in the instant case.
Finally, defendants complain of the quantum of the judgment. The only medical testimony was presented by Dr. Wallace H. Brown, the attending physician and surgeon who performed the operative procedure upon plaintiff’s wrist. Dr. Brown testified that there was a laceration measuring approximately two inches in length which severed four tendons; that the tendons were re-approximated by the operation, but there was a residual nerve damage and a ten to fifteen percent disability of the hand and arm which interfered with the full use of flexion and extension of the fingers. It is argued on behalf of defendants that Dr. Brown testified plaintiff would be able to use his right hand for any purpose other than the “making of fine movements such as a surgeon — or a watchmaker — .” We find this evaluation to be an argumentative opinion which does not accurately reflect the conclusion of this expert witness. The surgeon testified that plaintiff would experience some inability in the performance of manual labor with the freedom that he exercised prior to the injury.
We cannot find that the award made by the judgment appealed from is either excessive or inadequate.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.