## SOTER v. GRIESEDIECK WESTERN BREWERY CO.

No. 33128. May 4, 1948.

*193 P. 2d 575.*

factured by the defendant, from the case furnished by the defendant, he handled the particular bottle of beer carefully, but said bottle exploded from one of two causes, to wit: (1) the container or bottle used was insufficient and defective, or (2) in bottling said bottle of beer, defendant caused too much carbonic gas to be included. Plaintiff relies upon the doctrine of res'ipsa loquitur as well as upon the above-stated acts of negligence. Plaintiff also alleged there was a breach of the implied warranty of fitness by the defendant in placing said article on the market knowing that it would be handled without inspection, in selecting an insufficient container, or in excessively charging said beer as before alleged. He then alleged the damages sustained by the plaintiff. The defendant filed a general denial.

A jury was waived in said cause and at the conclusion of the evidence the court took the case under advisement and rendered judgment in favor of the defendant. The journal entry contained the following recitations:

"Findings of Fact

"(1) That the plaintiff owns and operates a sandwich shop in Oklahoma City, Oklahoma, near the Midwest Theater, where he sells, among other things, Stag Beer, which is brewed and bottled by the defendant at Belleville, Illinois. At about 9:00 o'clock P.M. the evening of August 26, 1944, plaintiff was replenishing the supply of bottled Stag Beer in the cooler from the cases thereof which had been delivered to his place of business some three days before by the Collins-Dietz-Morris Company, distributors of Stag Beer in Oklahoma City. He was pulling the beer bottles, two bottles in each hand, from the case and placing them in the cooler. He had placed several bottles from this case in the cooler when suddenly the bottle he then held in his right hand exploded with great force and pieces of the broken glass cut deep into the palm surface of his right hand.

"(2) In removing the bottle of beer that exploded from the case plaintiff

Paul Dudley and Albert D. Lynn, both of Oklahoma City (Dudley, Duvall & Dudley, of Oklahoma City, of counsel), for plaintiff in error.

Gilliland, Ogden, Withington, Shirk & Vaught, by W. R. Withington, all of Oklahoma City, for defendant in error.

BAYLESS, J. Plaintiff in error, hereinafter referred to as plaintiff, brings this appeal from a judgment of the district court of Oklahoma county denying the plaintiff relief sought in an action to recover damages for injuries to his right hand occasioned by an explosion of a bottle of Stag beer, brewed and bottled by the defendant in error, hereinafter referred to as defendant, which occurred as he was placing same in a beverage cooler in his place of business.

Plaintiff alleged that in removing the bottle of beer, which was manu-

handled the same carefully and in the manner he handled the bottles before it; that the container or bottle used was insufficient and defective.

"(3) The explosion inflicted painful and permanent injuries to the right hand of plaintiff, and he has been damaged in the amount of $1,848.00.

"Conclusion of Law

"Upon the foregoing Findings of Fact the Court makes and enters the following Conclusions of Law:

"(1) The Court has jurisdiction of the parties' and of the subject matter of this action.

"(2) The Court concludes as a matter of law, based upon the foregoing Findings, that the same are insufficient to allow recovery on the theory of negligence or breach of implied warranty, and that the plaintiff should take nothing, and the defendant should be discharged with its costs."

Plaintiff's first proposition is as follows:

"Where a manufacturer with information before him of the nature of the use to which an article manufactured by him is to be put and from the nature of such use must know that if the article when put to such use, if defective, will be imminently dangerous to persons who he knows must come in contact therewith, a duty rests upon such manufacturer to use ordinary care to ascertain the condition of the article to see that it is safe. If he fails to exercise ordinary care in this regard, and as a result sells the article in a defective condition, he is liable for personal injuries to that class of persons who must necessarily come in contact with such article, and liability is **not limited** to those with whom the manufacturer contacts."

In support of said rule plaintiff cites Crane Co. v. Sears, 168 Okla. 603, 35 P. 2d 916, which sustains this proposition.

In determining the liability of the defendant for failure to exercise ordinary care in the selection of a bottle, it becomes necessary to review the evidence concerning said selection and also to discuss the evidence regarding the cause of the accident.

The proof concerning the cause of the accident was supplied by a chemist who testified that three things could have caused the same: (1) a blow, which he stated the evidence did not disclose that the bottle had received, (2) improper manufacture of the beer under a high carbonization, and (3) a defective bottle improperly annealed. He testified in substance that, in his opinion, had the bottle received a blow after leaving the factory it would have exploded at that time. He therefore concluded that the bottle had not received a blow. As to cause number 2, the improper manufacture of the beer under very high carbonization, he said that "there is no reason to believe that circumstance existed." As to number 3, he testified that the bottle was defective in that it was improperly annealed, had an internal stress, and that the shock of cold water was sufficient to cause the bottle to burst by reason of the internal stress, which stress could have been caused by improper annealing. He further testified that the stress which did cause the explosion would not be revealed by its appearance and could not have been observed by an ordinary inspection, but would require a separate examination with polarized light to discover the defect.

This witness did not see the broken bottle or any part of it. The evidence disclosed that the official temperature in Oklahoma City on August 23rd, the day of delivery of the beer, was 99 degrees at 3:00 p.m., and that at 10:00 p.m., August 26th, the approximate time of the alleged explosion, the temperature was 67 degrees.

The evidence on the part of defendant disclosed that the bottling company which manufactured the beer was located in Belleville, Illinois, and the beer was shipped from their factory to Collins-Dietz-Morris Company, wholesalers. Testimony disclosed that the

bottles and contents are examined several times before same are sealed; that the last inspection made is under a large magnifying glass with lights on the bottles and contents; that small hairlines or cracks in the bottles will be shown up under such examination; and that defective bottles are not used. The evidence disclosed that beer is pasteurized before being bottled, and that the temperature under which beer is pasteurized is approximately 180 degrees. All bottles are cleaned by a sterilizing machine which cleans them by use of live steam and jets of water. There is further testimony that heat and agitation under certain circumstances would cause a bottle to explode. One witness for the defendant testified that he did not think that, at 72 degrees of heat, the gas contents of the beer would be increased.

The record does not disclose the comparative carbonization in beer and beverages designated as "soft drinks", but the parties in their briefs cite numerous "soft drink" cases, and since they treat the liability of a manufacturer of beer and "soft drinks" as being the same, in our discussion of the liability of defendant, we will treat his liability as being the same as the bottler of "soft drinks".

The defendant contends that since no request was made for findings of fact by either party, this court should disregard the findings of fact made by the trial court as disclosed in the journal entry and should treat the judgment of the trial court as finding for the defendant on all questions raised. In support of its proposition, it cites Midland Savings & Loan Co. v. Donohoo, 181 Okla. 498, 74 P. 2d 1147, and other cases, holding in effect that where no request has been made for specific findings of fact, and the trial court makes such specific findings, the same will be treated as a general finding only. However, we held in Thompson v. Renfrow, 148 Okla. 8, 296 P. 404, that even though no request was made for findings of fact, if the trial court saw fit to make such findings, it was not error to do so and such findings would not be disturbed unless against the clear weight of the evidence. Under the circumstances of this particular case, we deem it advisable to consider the specific findings made by the trial court and the conclusions of law based upon such findings.

In considering plaintiff's first contention, it becomes necessary to determine whether the defendant was negligent in failing to use ordinary care in the selection of the bottle which exploded, and since defendant contends that the finding of the trial court that the defendant used an insufficient or defective bottle is not supported by the evidence, we will consider both contentions in connection with our analysis of the evidence. We think that the defendant's contention that the trial court's finding that the bottle used by the defendant was insufficient or defective is well taken for the following reasons: The chemist who testified never saw the bottle claimed to be defective or any part of the same; he did not test the carbonic contents of this beer or other beer contained in similar bottles; he had no information as to the circumstances under which the beer was bottled; there is no evidence as to his knowledge of how the beer had been handled since it left the factory in Belleville, Illinois, nor how it was transported to Oklahoma, nor in what kind of containers it was kept; the evidence did not disclose where this beer was kept in the warehouse of the Collins-Dietz-Morris Company nor whether the beer in the warehouse and in the bottler's place of business was subjected to handling by the public. This witness did not discuss the effect of heat or agitation on bottled beverages. Although he did testify that when the bottle contacted the cold water it exploded because the bottle was improperly annealed, he did not give any reason for explosion except that the bottle was defective. He did not point out what effect cold water would have on defec-

tive bottles, nor why the cold water would cause such explosion. As to the first reason for an explosion which could be caused by a blow, he dismisses this reason upon the assumption that the evidence was silent as to whether or not it had received a blow and upon the further assumption that if the bottle had received a blow it would have exploded at the time it received the same, thus creating the impression that a bottle could not be weakened by external blows without causing an explosion. As to the improper manufacture of the beer under a very high carbonization, he said "there is no reason to believe that that circumstance existed." He did not testify as to the amount of carbonization ordinarily contained in a bottle of beer.

In discussing the liability of a manufacturer of bottled beverages based upon negligence of the manufacturer which would cause an explosion of the bottle, the courts have taken judicial knowledge that various circumstances should be considered which might cause a bottle to explode wherein the defendant would not be liable. See Stewart v. Crystal Coca-Cola Bottling Co. (Ariz.) 68 P. 2d 952. See, also, Slack v. Premier-Pabst Corp. (Del.) 5 A. 2d 516 (concerning the negligence of others who had the management, supervision, and control of the bottle after it had been delivered by the defendant; also, the fact that glass becomes weakened through age and also may be weakened through the application of some physical force.) See, also, Dunn v. Hoffman Beverage Co., 126 N.J.L. 556, 20 A. 2d 352 (discussing the handling of beverages after leaving the hands of the manufacturer); also, Hughs, etc. v. Miami Coca-Cola Bottling Co., 155 Fla. 299, 19 So. 2d 862 (discussing improper handling, atmospheric changes and changes in temperature).

Concerning the proof as to defendant's negligence in the selection of the bottles to be used, we observe that the plaintiff did not attempt to prove how the defendant had selected its bottles, but assumes that because the trial court found the bottle to be defective, the defendant did not use ordinary care in selection of same. We are of the opinion that the evidence wholly fails to sustain a charge of negligence on the part of defendant in the selection of the bottle, for the reason that the only evidence contained in the record concerning the selection of bottles to be used discloses that all bottles were inspected at different times and all bottles and the contents thereof were inspected under a large magnifying glass which discloses any crack or defect in the bottle. The plaintiff's expert witness testified that the defect he referred to in the bottle would not be observed under the ordinary examination, but could only be discovered by a special examination under a polarized light. There is no evidence that polarized lights are customarily used in the bottling industry. In Missouri Pacific Ry. Co. v. Gordon, 186 Okla. 424, 98 P. 2d 39, we held:

"Fact that an injury has occurred does not give rise to presumption of negligence, but is an affirmative fact for the injured party to establish in order to show the defendant has been guilty of negligence."

We think, under the facts in this case, that the plaintiff has failed to show that the defendant has been guilty of negligence in the selection of the bottle which exploded.

For his second proposition plaintiff contends that the defendant is liable to the plaintiff on the ground of breach of implied warranty for the injury sustained from the explosion. In support of this contention, he cites the case of Wood & Co. v. Val Blatz Brewing Co., 112 Okla. 119, 240 P. 115; also, Griffin v. Asbury, 196 Okla. 484, 165 P. 2d 822, wherein we said:

"Where a bottled beverage, intended for human consumption, is sealed by the manufacturer and placed upon the market through retail dealers, the manufacturer impliedly warrants such beverage to be fit for human consumption. Liability of the manufacturer to

the ultimate consumer who purchases from the retailer may be based upon implied warranty."

The reason for the rule above stated is that the manufacturer who sells the bottle knows that it will be used by the public without inspection and that he therefore should be liable for the contents placed therein. In such a case, when the seal is intact, it is presumed that no opportunity has been afforded for an intervening agency to tamper with the contents. However, we do not think this rule is applicable to a bottle or container which may become weakened by the manner and method in which it is handled, or by other circumstances such as heat, agitation, and other factors which under certain circumstances might cause the bottle to explode. Furthermore, it is logical to assume that if some deleterious substance is found in a sealed container or bottle that its presence therein makes out a prima facie case of negligence in the absence of a satisfactory explanation.

The authorities dealing with the liability of bottlers of beverages are sharply divided. Some of the authorities hold a bottler is liable on the theory of implied warranty. See Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 A. 2d 181; contra, see Gerber v. Faber (Cal.) 129 P. 2d 485. Other authorities hold the bottler liable for a breach of implied warranty under the Uniform Sales Act. See Cooper v. Newmann, 11 N.Y.S. (2d) 319; also Borucki v. MacKenzie Bros. Co., Inc., 125 Conn. 92, 3 A. 2d 224. Since Oklahoma has not adopted the Uniform Sales Act, we do not think the cases from New York and Connecticut are controlling. We think we have committed ourselves to a contrary rule in Abbott v. Peppers, 157 Okla. 300, 12 P. 2d 203, wherein we quoted from Mechem on Sales as follows:

"1311. No warranty implied on sale of ascertained chattel open to inspection. It is the well settled and general rule that, upon the present and executed sale of a definite, ascertained and existing chattel which is open to the inspection of the buyer, and of which the seller is neither the manufacturer nor the grower, no warranty whatever as to quality, fitness or condition is implied. . . ."

In the absence of evidence showing that defendant was negligent, we hold that plaintiff was not entitled to recover for breach of implied warranty.

The plaintiff contends that the rule of res ipsa loquitur should be applied under the facts in the instant case despite our previous holding in Texas Co. v. Jamison, 191 Okla. 283, 129 P. 2d 85. In that case we held that the doctrine of res ipsa loquitur cannot be invoked where the instrumentality is not under the exclusive control of the defendant at the time of the explosion. The plaintiff, in support of his contention, cites 45 C.J. 1216; Bradley v. Conway Springs Bottling Co. (Kan.) 118 P. 2d 601; Honea v. Coca-Cola Bottling Co. (Tex.) 183 S.W. 2d 968; Benkendorfer v. Garrett (Tex. Civ. App.) 143 S. W. 2d 1020. In the cases cited the evidence disclosed that the bottle which exploded was not subjected to any "unusual" handling after leaving the possession of the manufacturer, thus making an exception to the rule of res ipsa loquitur. However, in the instant case, no effort on the part of plaintiff was made to show how this bottle had been handled since it left defendant's possession. We, therefore, think the statement contained in the case of Hughs, etc., v. Miami Coca-Cola Bottling Co., supra, clearly states the rule with reference to the exception to the general rule. Therein that court said:

"Some of the courts of the land have applied the rule of res ipsa loquitur to cases in which exploding beverage bottles have been involved, and have held the bottler liable in damages even though the agency causing the injury was not in his possession or control at the time of the accident . . . But so far as we have been able to find from a study of the decisions, no court has ever held that recovery may be had in

such cases, under the res ipsa loquitur doctrine, without an affirmative showing on the part of the plaintiff that after the bottle left the possession of the bottler it was not subjected to any unusual atmospheric changes or changes in temperature, or that it was not handled improperly up to the time of the explosion."

Some courts proceed upon the theory that a manufacturer of bottled beverages should be the insurer of the container. See Charles Grant, Appt., v. Graham Chero-Cola Bottling Co., 176 N.C. 256, 97 S.E. 27, 4 A.L.R. 1090. However, we are unable to logically follow the theory that such bottled beverages should be treated as highly dangerous merchandise. Although no figures are cited in the briefs, we take judicial notice of the fact that millions of bottles of beverages are sold in Oklahoma each year, and that such manufacturers have been operating in Oklahoma since statehood. Since this case involving the explosion of a broken bottle is one of first impression in this jurisdiction, we do not feel justified in classifying such bottled beverages as dangerous merchandise. If such were the case, we surely would have had other cases involving the liability of the bottler. We, therefore, prefer to follow the rule announced in Slack v. Premier - Pabst Corp., supra, wherein that court said:

"(4, 5) Bottled beer is a commodity ordinarily harmless. It is not in general to be considered as a dangerous explosive. Glass is a highly inelastic substance, and although it does not become weakened through age alone, yet it is a brittle material, and may become weakened through the application of some physical force. Moreover, the sudden expansion or contraction of its surfaces, sufficient to cause cracks or breaks therein, due to abrupt changes of temperature, is a well known physical phenomenon. It is common knowledge that bottled beverages are transported and handled with abandon. It will not do, we think, to say that, as the bottle exploded, inferentially some one was negligent; nor, by a process of exclusion, to permit an inference of negligence to fall upon the bottler after the commodity has passed out of his control. The bottler of carbonated or fermented beverages is not an insurer. There is room in cases such as this for the recognition of the doctrine of unavoidable accident. ) The existence of negligence is not an ineluctable conclusion. But conceding, arguendo, that negligence on the part of some one must be inferred, the plaintiff must prove facts from which, as a logical, probable and reasonable deduction, the negligence of the defendant is inferred. Its existence cannot be a matter of surmise or conjecture.

"(6) The court of the declaration questioned by demurrer charges no more than that the plaintiff, without fault on his part, was injured by the bursting of a bottle of beer bottled by defendant. Proof of the facts alleged would leave to mere speculation the true cause of the occurrence. It is no more probable that the defendant's negligence was the cause of the explosion and resulting injury, than was the negligence of others who had the management, supervision and control of the bottle after it had been delivered safely by the defendant. In such case, the plaintiff must fail. See Law v. Gallegher (Del. Sup.) 197 A. 479."

The judgment of the trial court is therefore affirmed.

HURST, C.J., DAVISON, V.C.J., and WELCH, CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur.