[Civ. No. 24207.   Second Dist., Div. One.   June 24, 1960.]

ELAINE FOX HARTSOOK, Appellant, v. THE OWL
DRUG COMPANY (a Corporation), Respondent.

Joseph Schecter, Robert F. Dickman and Toxey H. Smith for Appellant.

Crider, Tilson & Ruppé and Henry E. Kappler for Respondent.

WOOD, P. J.—This is an action for damages for personal injuries allegedly occurring when a plastic toy top, which plaintiff was spinning, allegedly exploded and cut plaintiff's nose and eye. In a nonjury trial, judgment was for defendant. Plaintiff appeals and contends, in effect, that the evidence was insufficient to support the finding that there was no breach of warranty.

Mrs. Fox testified, as follows: She is the mother of plaintiff. On July 5, 1948, while she (witness) was leaving her home for the purpose of shopping downtown in Los Angeles, her daughter, who was then 13 years of age, asked her to buy a toy (for the daughter). About 6 p.m. of that day, she (witness) went into the store of defendant at Sixth and Broadway Streets and told the clerk therein that she "would like to buy something for my daughter where she won't get hurt." The clerk referred to a display of toys and said, "How about these?" The witness asked if they were safe. (Those toys were plastic tops, known as "Blo-Yr-Top.") The clerk replied, "Yes." The witness bought one of those tops and paid 20 cents for it. The top was placed in a paper bag. She (witness) left the store, entered a bus, and went home. When she was in the kitchen of her home she told the daughter that she had bought a present for her. Then she (witness) "put the stuff away that I had, groceries, or whatever it was," and she said to the daughter, "I will show you how it works." She put the top on her (witness') "hands and spun it, and I had it humming, and when it stopped I handed it to her and she started to spinning and it just started to humming and it

exploded like a firecracker, and of course, injured her." The toy "shattered into pieces all over," and the daughter's nose and eye were cut. She took the daughter to a hospital. Also, she delivered some of the pieces of the top to the hospital so that the doctors could see what had cut the daughter.

It was conceded that the plaintiff lost the sight of her right eye.

Mrs. Fox was asked by counsel for plaintiff, as follows: "Did you do anything to the top or anything of that nature from the time you bought it until you were showing it to your child?" She replied, "No, sir."

A broken plastic toy, consisting of a string and 10 pieces of the toy, were received in evidence as Exhibit 2. The pieces of the toy which were delivered to the hospital were not returned to Mrs. Fox. An unbroken toy, which was of the same type as the broken toy, was received in evidence as Exhibit 3.

Plaintiff testified, as follows: When she was injured she was 13 years of age, and at the time of trial she was 23 years of age. On July 5, 1948, when her mother was starting to town, she (witness) asked her mother to get something for her because she had not had anything for the 4th of July. When her mother returned from town about 7 p.m. on July 5, 1948, she (mother) had a toy which she showed to plaintiff while they were in the kitchen. Her mother "took it [toy] in her hands and spun it until it hummed a little bit and then she handed it to me; I in turn took the toy, started spinning it and pulling and it was starting to hum, and it just blew up, exploded." The toy did not strike anything while her mother was demonstrating it; and it did not strike anything while plaintiff was spinning it. When the top exploded she (plaintiff) could see it "coming into" her face. She went to a hospital and a surgical operation was performed. She lost the sight of her right eye.

One of the attorneys for plaintiff testified that on July 13, 1948, plaintiff was one of his clients; shortly after Mrs. Fox talked to him about the injury to plaintiff, he wrote a letter to the Owl Rexall Drug Company (a copy of the letter was received in evidence as Exhibit 4); shortly after the letter was sent, he received a telephone call from a person who identified himself "as being from Owl Rexall Drug Company"; the man stated that he had received the letter and had checked the article mentioned and had found that it was an "outside product"; the man also stated that he (witness) should contact the manufacturer, and that defendant would not pursue

the matter any further because there was no liability on its part.

No witness was called by defendant.

Plaintiff was married on November 18, 1951. The complaint was filed November 3, 1953. A first amended complaint was filed January 24, 1957. The case was tried on May 21, 1958.

The court found: Plaintiff was 13 years of age on July 5, 1948. On that date a toy known as "Blo-Yr-Top" was purchased by plaintiff's mother from defendant for use of her daughter, the plaintiff. The defendant knew that the toy when sold in the usual course of trade would be used by children. On said date, after purchasing the toy, plaintiff was playing with it in a normal manner, without negligence on her part, when it broke and disintegrated. At the time of the breaking and disintegrating of the toy, a piece or pieces of it struck plaintiff in the face, causing the loss of sight of one eye. Within a reasonable time after the accident, i.e., on July 13, 1948, written notice was given to defendant on behalf of plaintiff of the alleged breach of warranty as to the toy. It was not true that there was a breach of warranty, express or implied, by defendant with respect to the toy. It was not true that the toy was defective at the time of the sale. It was not true that at the time of the sale the toy was not fit for the intended use thereof. The defendant sold the toy to be used as a toy and defendant warranted the performance thereof in its intended use as a toy by the terms printed on the toy as follows: "Whirl a few times then pull on string and listen to it whistle and sing"; but the court finds there was not any breach of warranty, either express or implied.

Appellant contends, in effect, that the evidence was insufficient to support the finding that there was no breach of warranty. She argues that there was evidence that the toy was defective at the time of the sale because the toy was fully accounted for from the time it was bought until the time it disintegrated; that the evidence was undisputed that the condition of the toy was not changed from the time of its purchase until the accident; that the mother and daughter testified that the toy did not strike anything and was not damaged; the mother demonstrated the toy and handed it to her daughter; the daughter pulled the string as it was designated to be pulled, and the toy was defective because it disintegrated.

At a hearing upon objections to proposed findings, the trial judge stated, in effect, that his decision was based on the

failure of plaintiff to account for the manner in which the article (toy) was cared for from the time it was bought until it was taken home. He also said that the mother went home on the bus and she carried other articles she had purchased, which articles apparently were groceries.

After the matter had been submitted for decision, a card was sent to the parties, whereon it was stated that judgment would be for defendant; and the writing thereon included a citation of the case of *Trust* v. *Arden Farms Co.*, 50 Cal.2d 217 [324 P.2d 853]. Appellant seems to be of the opinion that the decision of the trial court in the present case was based solely on the *Trust* v. *Arden Farms* case. That citation, which was a part of a memorandum announcing the decision, was preceded by the abbreviation "cf." It does appear, by reason of the citation, that the trial court regarded legal principles of the cited case as applicable in the present case, but the citation does not necessarily signify that the trial court based its decision solely on that case. It is to be noted that in the *Trust* v. *Arden Farms* case a *judgment of nonsuit* was affirmed; whereas, in the present case the judgment appealed from is a judgment *on the merits*. In other words, in the present case it appears that the trial court determined the facts, with respect to breach of warranty, in the light of legal principles involved in the cited nonsuit case.

In *Trust* v. *Arden Farms Co., supra,* a milk bottle, which plaintiff was handling, broke and injured plaintiff. The bottle of skim milk involved therein, and other bottles of milk, had been delivered in a container to the porch of plaintiff's home three days before the accident, and plaintiff had carried the container (and the bottles therein) into the house and had wiped the bottles and put them in the refrigerator. Bottles of older milk in the refrigerator were moved forward on the shelf and the bottles of fresh milk, except the skim milk, were placed behind them. The bottle of skim milk was placed at the front of the shelf. After the bottle of skim milk had been delivered, it was removed at least once by plaintiff and some of the contents had been used. In that case the court said, at page 222: "[I]t is clear that any of plaintiff's three children, having as they did access to the refrigerator at all times, may have struck the bottle of skim milk with another bottle and damaged it prior to the time of the accident, or it may in some other manner or fashion have been damaged." It was also said therein (p. 222): "[I]t is clear . . . that there is a complete hiatus as to what, if anything, happened to the bottle

between the time it was placed in the refrigerator by plaintiff and the time the injury occurred." It was also said therein, at page 223: "There was no evidence that the bottle was defective when delivered by Arden to plaintiff, and therefore there is no basis for claiming any breach of warranty."

In the present case, as above shown, the judge stated that his decision was based on the failure of plaintiff to account for the manner in which the toy was cared for from the time it was bought until it was taken home. ▮▮ The burden was on plaintiff to prove the condition of the toy. The court found that the toy was not defective at the time of the sale. ▮▮ The mother testified to the effect that when she arrived home she "put the stuff away" that she had with her, such as "groceries or whatever it was." The trial judge could reasonably infer from her testimony that she carried groceries and other things, in addition to the toy, while she was returning from defendant's store to her home, which return included traveling on a bus. Under such circumstances, the trial court could reasonably have concluded that the toy might have been struck and damaged by some other object prior to the time of the accident or in some other manner have been damaged. Ten years elapsed from the time of the accident to the time of trial. The trial court could reasonably find that plaintiff had not carried the burden of proving that, prior to the accident, the toy remained in the same condition it was in at the time it was purchased. ▮ Even though no witness was called by the defendant, the court was not required to find according to the testimony on behalf of plaintiff. ▮▮ In *Tidlund* v. *Seven Up Bottling Co.*, 154 Cal.App.2d 663 [316 P.2d 656], it was said, at pages 666-667: "[T]he jury, in passing upon the credibility of a witness, is entitled to consider his interest in the result of the case, his motive, and the manner in which he testifies [citations], and the jury may disbelieve the testimony of the witness even though it is uncontradicted if there is any rational ground for doing so." A factual question was presented for the determination of the trial judge. The evidence was sufficient to support the findings.

Respondent asserts, in effect, that in any event since no privity of contract existed between plaintiff and defendant, there was no liability for the claimed breach of warranty. In view of the above conclusion, it is not necessary to determine this contention of respondent.

Also, in view of the above conclusion, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied July 18, 1960, and appellant's petition for a hearing by the Supreme Court was denied August 17, 1960. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.