[Civ. No. 24566. Second Dist., Div. Three. Mar. 13, 1961.]

ANDRIS VALLIS, Appellant, v. CANADA DRY GINGER ALE, INC. (a Corporation), Respondent.

*Assigned by Chairman of Judicial Council.

Jerome W. Shepard for Appellant.

Schell & Delamer and Earle K. Stanton for Respondent.

FORD, J.—This is an appeal from a judgment of nonsuit as to the plaintiff's second and third causes of action which were based on alleged implied warranties.[1] The evidence

[1]In the notice of appeal, it is stated that the appeal is ''from the said Judgment heretofore entered in the above entitled cause and the whole thereof.'' The record on appeal does not contain a judgment pursuant to the verdict rendered in favor of the defendant on the first cause of action which was based on alleged negligence. However, in their briefs the parties have treated this appeal as being from the order granting the motion for nonsuit entered in the minutes. Such minutes are shown in the clerk's transcript on this appeal. The order so entered constitutes a judgment. (*Costa* v. *Regents of University of Calif.*, 103 Cal.App.2d 491, 494 [229 P.2d 867].) As said in *Perry* v. *First Corporation*, 167 Cal.App.2d 359, at page 368 [334 P.2d 299]: ''The contention is also made that this appeal should be dismissed because the notice of appeal was couched in terms of an appeal from a formal written judgment instead of the minute order which preceded it, although filed within 60 days of the entry of the minute order. It is clear that plaintiff seeks a review of the order of nonsuit, which is the judgment in a case such as this. (Code Civ. Proc., §§ 581c and 581d, construed in *Costa* v. *Regents of University of Calif.*, 103 Cal.App.2d 491, 492-494 [229 P.2d 867], and cases therein cited.) The notice of appeal was filed in ample time. No one has been misled. No prejudice to the defendants is involved. The notice should and will be treated as being from the appealable order and, therefore, effective. (See *Holden* v. *California Emp. etc. Com.*, 101 Cal.App.2d 427, 430 [225 P.2d 634]; *Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719, 722 [247 P.2d 362].)'' Notices of appeal are to be liberally construed so as to permit, if possible, a hearing on the merits. (*Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719, 722 [247 P.2d 362]; *Holden* v. *California Emp. Stab. Com.*, 101 Cal.App.2d 427, 430 [225 P.2d 634].) As the parties do, we consider this appeal to be from a judgment of nonsuit. (See *Smith* v. *Smith*, 126 Cal.App.2d 194, 195 [272 P.2d 118].)

which was before the trial court is embodied in a settled statement prepared pursuant to rule 7 of the Rules on Appeal. That statement is "limited to the oral testimony applicable to the correctness of the ruling of the trial judge in granting" the motion for nonsuit. Portions thereof are set forth in the margin.[2]

---

[2] "The testimony relative to these facts was received from three witnesses, plaintiff, Andris Vallis, 46 years of age and employed as kitchen helper at Lee's Restaurant for approximately four years, Joseph Piva, manager and part owner of Lee's Restaurant, and Allan Jones, bartender. Mr. Vallis was employed at Lee's Restaurant in the San Fernando Valley, to do clean-up work; his general hours of employment were from 8 to 4 and included sweeping and mopping the area behind the bar and in general filling three cases of bottled beverages kept beneath the bar. That on the 15th day of August, 1957 at about 10 o'clock A. M. plaintiff was engaged in cleaning up behind the bar and in placing a wooden slatted floor mat on the floor. In this area underneath the bar and resting on the floor were three cases of beverages, to wit, a partitioned case containing bottles of Canada Dry Club Soda, a carbonated beverage under pressure, a case of whiskey adjoining this, and another case of mix consisting of Ginger Ale and 7-Up. Adjacent to the bar was a walk-in cooler where the soda was stored from time of its delivery until its transfer to the cases beneath the bar. The method used by Mr. Vallis was to transfer bottles from the storage cases in the cooler to another case, carry that case to the bar itself, and transfer the soda to the case beneath the bar. This was done every morning according to the needs to replace those which had been used the night before. The plaintiff, while bent over the case of Club Soda, attempting to line it up with other cases so that the floor mat could be placed in position, was struck on the arm, face and right eye as a result of one of the bottles of Club Soda exploding while it was in the case resting underneath the bar. Vallis pushed the particular case containing the Club Soda in about two inches to make it even with the other cases while it was resting on the floor. He saw the particular bottle before it exploded. He had filled all the cases the day before and in filling them he had put the cases down easy and he did not fill any cases the day of the accident. The bar had been open the day prior to the accident after the cases had been filled. He was stooping over the particular case with bent knees when the bottle exploded. The bottle which exploded was in the second row of the partitioned Club Soda case. The particular cases were furnished by the defendant Canada Dry, and were of a height at least equal to the height of the bottles. Vallis always replaced the bottles as needed by carrying them in a case. It was approximately 4 to 5 yards from the cooler where the bottles were stored to where the cases rested. Plaintiff, Vallis, suffered lacerations on the arm and face and a laceration of the right eye which affected his sight and which required surgery to the eye.

"The testimony of Joe Piva was to the effect that he was the manager and part owner of Lee's Restaurant; that he arrived at the bar on the morning in question and that he was in the office making out reports when Mr. Vallis arrived, injured. He transported Mr. Vallis to Dr. Matlin. He stated that there were wooden mats under the cases of the bottles under the bar and that the cooler room was kept under refrigeration and that the Club Soda was stacked in a row, and that was the way they were brought in by the defendant's salesmen. The cases that were under the bar and which contained the bottle that exploded were the same kind of cases that the goods were delivered in. Each case contains

Two problems are presented on this appeal. The first is whether there was an implied warranty with respect to the condition of the bottle as distinguished from its carbonated contents. The second problem is, if there was such a warranty, whether the plaintiff, an employe of the vendee, can claim any rights thereunder. It is alleged in the second cause of action that the defendant warranted that the "glass bottle containing the beverage known as 'Club Soda,' was reasonably fit for the purpose for which it was intended, to wit, that the carbonated beverage would be safely contained within its glass container at all times prior to its opening and use, and would not explode or fragment." (A similar allegation as to the contents of the bottle is found in the other cause of action.) Since no question is raised on this appeal as to the sufficiency of the pleading of an implied warranty (*cf. Ice Bowl, Inc.* v. *Spalding Sales Corp.*, 56 Cal.App.2d 918, 922-923 [133 P.2d 846]; *Sears, Roebuck & Co.* v. *Marhenke*,

---

12 bottles and the partitions are made of cardboard paper, and the side of the cases is wood, and it has a wooden bottom. The bottles sat about 1½ inches below the top of the case. That upon returning to the bar from the doctor's office where he had taken Mr. Vallis, Mr. Allan Jones, the bartender, brought him the bottle out of the case and Jones and Piva looked at it and it was three or four pieces of the bottle, and that the bottom of the bottle was intact and around the shoulder of the bottle was about three or four pieces, and the neck was all intact. Piva testified that he took the pieces into his office and looked at the broken glass and it appeared to him like he saw two little bubbles in the neck of the glass right at the shoulder. He stated he had been handling carbonated drinks for approximately 17 years and when he looked at the bottles [*sic*] there appeared to be two bubbles like flaws. . . . Piva further testified that it was not necessary to pull the cases out from underneath the bar as they could be re-filled by reaching back and putting the bottles in the case. Piva further testified the bottle was purchased ten days to two weeks before the accident from the Canada Dry Company and that a representative of the Canada Dry Company stored the cases in the cooler. The cases were not moved from the time they were placed in the cooler by the Canada Dry representative until they were used. In moving the bottles from the cooler to the place under the bar, the wooden case from Canada Dry was used. The only persons who would re-stock the bottles of Canada Dry Soda underneath the bar would be the plaintiff, Mr. Vallis, unless the stock ran out during the evening, when the bartender would do so. . . .

"The exploded bottle of Club Soda was purchased from the defendant, Canada Dry Ginger Ale Company, for the purpose of using the same as a mixer in the preparation of drinks served over the bar to the public for human consumption. The Club Soda was a carbonated beverage and was contained in a glass bottle and the contents of the bottle were under carbonated gas pressure.

"The defendant, Canada Dry Ginger Ale Company, manufactured, bottled and sold the said carbonated beverage known as Club Soda.

"That on or about the 20th day of September, 1957 the plaintiff gave notice to the defendant corporation of its breach of warranty by letter addressed to the said corporation from the plaintiff's attorney."

121 F.2d 598, 600-601), we conclude that the parties are satisfied that, taking the cause of action as a whole, sufficient facts are alleged so as to bring into being such implied warranty, if any, as is recognized by the law in a case of this nature. (*Cf. Carter* v. *St. Louis Dairy Co.* (Mo.App.), 139 S.W.2d 1025, 1026.) ▮ In any event, since the record does not disclose that any objection was made in the trial court based upon the manner in which an implied warranty was pleaded, we must conclude that, by trying the issue of liability without such question being raised, the defendant waived any curable defect that might be found in the pleading. (See *Hedlund* v. *Sutter Med. Serv. Co.*, 51 Cal.App.2d 327, 339 [124 P.2d 878].)

▮ While there is no ready precedent in this state as to whether there is an implied warranty of which the plaintiff may avail himself under the facts of this case, the course which this court must take in resolving the problems presented has been substantially charted in the recent cases of *Trust* v. *Arden Farms Co.*, 50 Cal.2d 217 [324 P.2d 583], and *Peterson* v. *Lamb Rubber Co.*, 54 Cal.2d 339 [5 Cal.Rptr. 863, 353 P.2d 575]. It is true that the prevailing opinion in *Trust* v. *Arden Farms Co.* does not expressly hold that there may be an implied warranty as to the container of food or of a beverage (as distinguished from the food or beverage itself) but that assumption appears to be made in the opinion, at least for the purpose of the determination of the problem there presented. It was said (50 Cal.2d, at p. 223): ''There was no evidence that the [milk] bottle was defective when delivered by Arden to plaintiff, and therefore there is no basis for claiming any breach of warranty.'' But, in any event, there is nothing necessarily inconsistent with that determination in the following statement found in the second of the three concurring and dissenting opinions in that case (50 Cal.2d, at p. 237): ''Whatever the arguments for limiting the manufacturer's strict liability to foodstuffs, there is no rational basis for differentiating between foodstuffs and their containers. (*Nichols* v. *Nold*, 174 Kan. 613 [258 P.2d 317, 323]; *Cooper* v. *Newman*, 11 N.Y.S.2d 319, 320; *Haller* v. *Rudmann*, 249 App.Div. 831 [292 N.Y.S. 586, 587]; *McIntyre* v. *Kansas City Coca Cola Bottling Co.* (Mo.), 85 Fed.Supp. 708, 711; *Mahoney* v. *Shaker Square Beverages*, Ohio C.P., 102 N.E.2d 281, 289; *Geddling* v. *Marsh* [1920] 1 K.B. 668, 672-673; *Morelli* v. *Fitch and Gibbons* [1928] 2 K.B. 636, 642-644; see Prosser, Torts, [2d ed.] § 84, p. 509.)'' In the

third concurring and dissenting opinion it is said (50 Cal.2d, at pp.238-239) : ''If an inference to that effect were drawn by the jury, the defect in the bottle would constitute a breach of warranty by Arden under section 1735 of the Civil Code (Uniform Sales Act, § 15), which reads in part: 'Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, *except as follows*: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.' (Italics added.)

''Section 1735 does not refer merely to goods sold but to all 'goods supplied under a contract to sell or a sale.' It has been held that when bottled beverages are sold, the bottles in which they necessarily must be delivered are *supplied under the contract of sale* within the meaning of the statute although the bottles are bailed rather than sold. (*Geddling* v. *Marsh* (1920), 1 K.B. 668; see 1 Williston on Sales (rev. ed. 1948), 582, n. 1.) The Geddling case related to a sale of 'lime juice and soda'in bailed bottles and was decided under section 14 of the English Sale of Goods Act, 1893, which contains provisions nearly identical with those quoted above from section 1735. The findings in that case showed that the sale came within the first subdivision of the section, but the reasoning of the court is equally applicable to a sale coming within the second subdivision. Accordingly, even if we assume that the bottle involved here was bailed, it would be subject to any warranty which would be applicable under either of the quoted subdivisions if the bottle had been sold.[3]

---

[3]In the first of the concurring and dissenting opinions in *Trust* v. *Arden Farms Co., supra,* the following discussion is found (50 Cal.2d, at pp. 232-233): ''However, a question does arise as to whether there was a sale of the bottle. This has never been authoritatively answered in California and there is a split among the cases in other jurisdictions that have considered the question, but the weight of authority is that there is a sale of the bottle. In *Naumann* v. *Wehle Brewing Co.,* 127 Conn. 44 [15 A.2d 181], it was held that the warranty under the sales

"The sale of a bottle of milk by a dairy under the circumstances appearing here clearly comes within the language of the second subdivision of the statute, and the seller's implied warranty of merchantable quality under this provision includes a warranty that his product is reasonably fit for the general purpose for which goods of that kind are sold. (See *Simmons* v. *Rhodes & Jamieson, Ltd.*, 46 Cal.2d 190, 194 [293 P.2d 26] ; *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 694 [268 P.2d 1041].) It is obvious that a milk bottle which is so defective that it will break under normal handling is not fit for the ordinary use for which it was intended and that the delivery of such a defective bottle constitutes a breach of warranty." (See also *Canada Dry Bottling Co. of Florida* v. *Shaw* (Fla Dist. Ct. App.), 118 So.2d 840, 842.)

act extends to a returnable beverage container, ruling that there had been a sale of the bottle. To the same effect, *McIntyre* v. *Kansas City Coca Cola Bottling Co.* (Mo.), 85 F.Supp. 708, 711; *Nichols* v. *Nold*, 174 Kan. 613 [258 P.2d 317] ; *Mead* v. *Coca Cola Bottling Co.*, 329 Mass. 440 [108 N.E.2d 757]. In two other states, New Jersey and New York, the courts have ruled that in the sale of consumer goods in a bottle, the seller warrants the fitness of the container as much as the contents on the ground that the container is an essential part of the transaction, it being immaterial whether the bottle is sold with the contents or subject to a refund of deposit or return. (*Cooper* v. *Newman*, 11 N.Y.S. 2d 319; see *Healey* v. *Trodd*, 124 N. J. L. 64 [11 A.2d 88].)

"The jurisdictions that have denied extending the warranty to the container have done so on the grounds either that the container was not covered by the act (*Poplar* v. *Hochschild, Kohn & Co.*, 180 Md. 389 [24 A.2d 783]), or that the Uniform Sales Act had not been adopted in their jurisdiction (*Soter* v. *Griesedieck Western Brewery Co.*, 200 Okla. 302 [193 P.2d 575, 4 A.L.R.2d 458]). In the only California case, the court, in dictum, discussed the question in a light that does not speak favorably of extending warranty to the container (*Gerber* v. *Faber*, 54 Cal.App.2d 674, 687-688 [129 P.2d 485].) However, this case is by no means conclusive and should not operate to prevent this court from considering the problem as an original proposition.

"I am persuaded that the more reasoned rule, supported by the realities of the situation is that the warranty extends to the milk bottle whether returnable or not, there being a 'sale' of the milk bottle within the meaning of that word as it is used in Civil Code, section 1735, when it is delivered to a customer. In fact the buyer had no choice but to accept the bottles delivered by Arden. They were selected solely by the seller for the purpose of containing milk, and placed at the buyer's doorstep by Arden's choice alone. Since a container is necessary for the sale of milk, Arden in any such sale must provide a container suitable for the purpose and the failure to provide such container would render the sale of milk as we know it today commercially impossible. Thus, the dairy's sale involves the container as much as the milk. The fact the bottle may be returned does not prevent there being a 'sale' of it, for returning bottles is not mandatory upon the customer, who may keep it in his discretion, but returns it as a matter of convenience to himself and the dairy, which in turn saves him additional expense in purchasing milk."

There is a conflict of authority in this country as to the existence of an implied warranty of the condition of a container of food. After noting such conflict, Dean William L.. Prosser recently said: "This metaphysical distinction between the container and the contents can only be regarded as amazing. The two are sold by each seller, and received by the ultimate purchaser, as an integrated whole; and where the action is against the immediate seller, it is well settled that the warranty covers both." (Prosser, *The Assault Upon the Citadel* (*Strict Liability to the Consumer*), 69 Yale L. J. 1099, 1138.)[4]

We have concluded that there was an implied warranty of the nature discussed above with respect to the bottle herein involved. But there still remains the question of whether such warranty extended to the plaintiff as an employe of the restaurant enterprise to which the bottle, together with its contents, was delivered. In *Peterson* v. *Lamb Rubber Co., supra,* 54 Cal.2d 339, the plaintiff, an employe of the vendee, suffered personal injuries as the result of the disintegration of a grinding wheel purchased from the defendant. In that case, a count in the complaint alleged an implied warranty by the defendant of fitness for use and of merchantable quality under the provisions of subdivisions (1) and (2) of section 1735 of the Civil Code. A general demurrer thereto was sustained without leave to amend. The parties agreed on the appeal that the only ground upon which the demurrer could have been sustained was that of lack of privity of contract between the plaintiff and the defendant manufacturer. The Supreme Court, in rejecting the argument that lack of privity precluded recovery, said (54 Cal.2d 339, at pp. 347-348): "Plaintiff emphasizes, however, that the grinding wheel here involved was manufactured, sold, and purchased, to be used on a power driven, high speed, rotating motor; that it was known by defendant manufacturer to be dangerous if defectively made or if operated at speeds beyond its maximum capabilities (which were not marked on it), and that its ingredients were secret and known only to defendant. Therefore, says plaintiff, it was a dangerous instrumentality if containing latent defects or if improperly used, and in view of modern

---

[4]Dean Roscoe Pound has recently considered the problem of the exploding bottle. He states: "'As we look back over this half a century development of the law governing injuries from explosion of bottled beverages, it seems clear that we must break away from the idea of fault as the fundamental 'and' exclusive ground of liability or even as giving an analogy from which to reason about these cases.'" (Pound, *The Problem of the Exploding Bottle,* 40 Boston U.L.Rev. 167, 183.)

industrial usage employes should be considered a member of the industrial 'family' of the employer—whether corporate or private—and to thus stand in such privity to the manufacturer as to permit the employes to be covered by warranties made to the purchaser-employer.

''We are persuaded that this position is meritorious. In the first place, it is a matter of common knowledge, and of course known to vendor-manufacturers, that most businesses are carried on by means of the assistance of employes and that equipment or supplies purchased by employers will in actual use be handled by the employes, who in this respect may be said to stand in the shoes of the employer. Moreover the term 'privity' itself appears to be of uncertain origin and meaning and to have been developed by the courts and applied in various contexts. (See *Klein* v. *Duchess Sandwich Co., Ltd.* (1939), *supra,* 14 Cal.2d 272, 276-283 [2, 3]; 4 Corbin on Contracts, § 778; 33 Words and Phrases 799-822.) One of the customary definitions is that 'privity' denotes mutual or successive relationship to the same thing or right of property; it implies succession. (See cases collected in 33 Words and Phrases 819-820.) Thus, in the present context, the employe had the successive right to the possession and use of the grinding wheel handed over to him by his purchaser-employer, and, we believe, should fairly be considered to be in privity to the vendor-manufacturer with respect to the implied warranties of fitness for use and of merchantable quality upon which recovery is here sought.

''Amici curiae supporting defendant urge, however, that section 1735 of the Civil Code, enacted in 1931, has been consistently interpreted by the courts in a manner opposed to plaintiff's position and contentions, and that failure of the Legislature to alter the previous judicial interpretation is indicative of legislative intent. (See *Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [8-9] [289 P.2d 450, 54 A.L.R.2d 1137].) However, as shown hereinabove, interpretation by California courts has not been as clear cut as amici curiae contend, and, further, the foodstuffs exception has been court developed in the interim. (*Klein* v. *Duchess Sandwich Co., Ltd.* (1939), *supra,* 14 Cal.2d 272, 276-283 [2, 3].) ''[5]

It is a matter of common knowledge that the explosion

---

[5]The Peterson case was decided after the judgment of nonsuit had been granted in the present case. Discussions of the Peterson case are found in 34 So.Cal. L.Rev. 98 and 8 U.C.L.A. L.Rev. 230, 233. (See also 75 A.L.R.2d 39, 69.)

of a defective bottle containing a carbonated beverage may be the cause of serious physical harm to a person handling it or who is in its vicinity when it explodes. ▮▮ A bottle which is subject to such disintegration in the course of ordinary handling or storing because of a defect therein is dangerous in its intended use and is not of merchantable quality. ▮▮ It is obvious that its handling by an employe of the immediate vendee in the normal course of his work, with consequent exposure to danger, is to be expected. We fail to see how the application of the reasoning of the Peterson case can be stopped short of a case such as is here presented. Accordingly, we believe that consistently with the determination of the Supreme Court in that case we must hold that the implied warranty extended to the appellant. (*Cf. Gottsdanker* v. *Cutter Laboratories*, 182 Cal.App.2d 602, 606-607 [6 Cal.Rptr. 320]; see 2 Harper & James, Law of Torts (1956), § 28.16; 74 Harv. L. Rev. 630.)

While it was error to grant the motion for a nonsuit, upon a trial on the merits it will, of course, be for the trier of fact to determine whether there was a defect in the bottle at the time of its delivery by the defendant to the plaintiff's employer. (*Cf. Hartsook* v. *Owl Drug Co.*, 182 Cal.App.2d 150 [5 Cal. Rptr. 835].)

The judgment of nonsuit is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied March 27, 1961.