[No. B067825. Second Dist., Div. Seven. June 17, 1993.]

JONES T. HUYNH, Plaintiff and Appellant, v.
INGERSOLL-RAND, Defendant and Respondent.

COUNSEL

Charles R. Weldon for Plaintiff and Appellant.

McHale & Connor and Bruce Janger for Defendant and Respondent.

OPINION

**JOHNSON, J.**—In this case, a worker sued the manufacturer of a hand-held power grinder which severely injured his eye. The trial court granted summary judgment on grounds the grinder was "misused" by attaching the wrong disc to the machine. We reverse because the defendant failed to sustain its burden of proving the "misuse" caused the injury or of demonstrating the manufacturer provided an adequate warning against this potential dangerous mismatch of components.

### FACTS AND PROCEEDINGS BELOW

In September 1987, appellant Jones T. Huynh applied for a position as a welder at Southwest Marine, Inc. This firm required all prospective welders

to demonstrate their ability through a "welding test." On September 27, 1987, the third day of his test, Huynh was required to use a grinder. Some Southwest Marine employee handed Huynh an Ingersoll-Rand (Ingersoll) model DG220 pneumatic hand grinder with attached disc. The following language was inscribed in tiny letters on the "trigger" of the Ingersoll pneumatic grinder.

Warning
Operate with Equip
Rated at Tool R.P.M.
Model DG220
Rated 30000
Ser AHJ20154

(A photocopy of the imprint of this language was included in the record before the trial court and on this appeal.)

When given to Huynh, this grinder and disc had already been assembled either by that employee or another Southwest Marine employee. Shortly after Huynh started using the grinder the disc "exploded." Fragments of the disk struck Huynh's face, severely damaging his left eye.

On September 19, 1988, Huynh filed a complaint against several defendants including Ingersoll, the manufacturer of the pneumatic grinder. The complaint contains three causes of action: strict product liability, negligence, and breach of warranty. All three causes of action embody broad allegations the grinder was defective in design and manufacture, and lacked adequate warnings.

Ingersoll filed an answer presenting a general denial and, among other things, an affirmative defense based on Huynh's alleged "misuse" of its product, the grinder.

Ingersoll moved for summary judgment based on the "misuse" affirmative defense. The motion was supported by declarations the grinder was rated at 30,000 revolutions per minute (r.p.m.'s) while the disc Huynh used was rated at only 24,000 r.p.m.'s. In his opposition, Huynh contended the "misuse" was foreseeable and Ingersoll's warning against this mismatch danger was inadequate. As alternative grounds for resisting the "misuse" affirmative defense, Huynh argued the causation issue remained a jury issue and, in any event, the grinder was defectively designed in ways which promoted a mismatch of grinder and disc and/or independently contributed to Huynh's injuries.

While conceding it was a "close case," the trial court nevertheless entered summary judgment in favor of defendant on April 23, 1992. In doing so, the court upheld the affirmative defense of "misuse" of the product. It also found the "adequacy" of the warning was irrelevant because some Southwest Marine employees had read and comprehended that warning. It further found Huynh had not produced sufficient credible evidence of a design defect to support that basis of liability.

## Discussion

I.   *Standard of Review for Summary Judgment Based on Defendant's Assertion of Affirmative Defense.*

■   The general principles governing review of any summary judgment require the closest scrutiny of the trial court's ruling when it reaches the appellate level. "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (Citation omitted.) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. . . . [¶] . . . ' "The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion." ' " *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 626-627 [193 Cal.Rptr. 600].) "If any triable issue of fact exists, it is error for the trial court to grant a party's motion for summary judgment." (*Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125].)

■   The burden on the moving party, when as is typical that party is a defendant, becomes even heavier when the summary judgment motion is based on an affirmative defense. Instead of merely supplying enough evidence to negate a single element of plaintiff's cause of action, the moving party must produce evidence which proves a *"complete* defense." (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744 [176 Cal.Rptr. 224], italics added.) "[T]here is no obligation on the opposing party (plaintiffs here) to establish anything by affidavit unless and until the moving party has by affidavit stated ' "facts establishing *every element* [of the affirmative defense] necessary to sustain a judgment in his favor. (Citation omitted.)" ' " (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 50 [46 Cal.Rptr. 552].)

What this means, of course, is that if an affirmative defense has four elements, it does not suffice even if the defendant produces *overwhelming*

evidence as to three of those elements. If the defendant fails to address the fourth element at all or to produce substantial evidence supporting that element, the trial court cannot properly grant summary judgment. Moreover, a summary judgment granted in those circumstances would have to be reversed, even if the plaintiff failed to introduce a scintilla of evidence challenging that element.

## II. Summary Judgment Was Inappropriate Because of the Existence of Triable Issues.

Ingersoll predicated its summary judgment motion on a single ground—the affirmative defense that Huynh "misused" its product, the grinder, by coupling it with a disc not rated to handle the higher speeds at which the grinder was capable of running. Several triable issues remain concerning this narrowly focused summary judgment motion.

### A. A Triable Issue Remains Whether the Alleged "Misuse" of Ingersoll's Grinder Was the Actual Cause of Huynh Injury.

■ "Misuse" is a defense only when that misuse is the actual cause of the plaintiff's injury, not when some other defect produces the harm. (*Self* v. *General Motors Corp.* (1974) 42 Cal.App.3d 1, 9 [116 Cal.Rptr. 575].) This causation is one of the elements of the "misuse" affirmative defense and thus the burden falls on the defendant to prove it. At the summary judgment stage, it is not the responsibility of the responding party to produce evidence other factors may have caused the injury. Instead, it is part of the moving party's obligation to complete its proof of the affirmative defense of "misuse" by demonstrating this "misuse"—rather than some other factor—was the proximate cause of the injury.

■ Ingersoll produced no evidence supporting a finding this disc exploded on this occasion solely because the plaintiff used a disc which was not rated for quite as many r.p.m.'s as the grinder.[1] (Notably, the disc was only rated for speeds 20 percent less than the grinder, not the 600 percent less which appeared in *McCurter* v. *Norton Co.* (1968) 263 Cal.App.2d 402

---

[1]Ingersoll did not even produce evidence this grinder actually was being operated at its top rate of 30,000 r.p.m.'s or anything approaching that speed at the time of the incident. Nor, in the alternative, did it produce evidence the grinder was a single speed machine which only could be operated at that speed and no lesser. Thus, on the record before the trial court on this summary judgment motion it is entirely possible the grinder actually was spinning at less than 24,000 r.p.m.'s and the mismatch between grinder and disc was irrelevant.

[69 Cal.Rptr. 493], the case on which Ingersoll primarily relies.)[2] While this is a *possible* cause, respondent failed to demonstrate it was the *only* possible cause or that it was *the* cause on this occasion. On the basis of respondent's motion and supporting documents, it is not possible to rule out other defects in the design or manufacture of the grinder as a cause of this particular injury.

Ingersoll could have discharged its obligation on the causation issue, for instance, by submitting the declaration of an expert who expressed an opinion it was more probable than not this disc exploded because the grinder was operating at a speed in excess of the maximum this type of disc can sustain. But Ingersoll failed to introduce such a declaration or any other evidence that what it *presumed* to be the cause in fact *was* the cause of appellant's injury.

At oral argument, Ingersoll's counsel claimed no evidence was required on the causation issue because "it speaks for itself." Sometimes cause-and-effect relationships are so simple and visible they indeed do "speak for themselves." For example, one man strikes another in the face with a fist, breaking the latter's jaw. But in other situations the cause and effect are not so obvious, often occurring at a microscopic level or involving a complex chain of events or a variety of possible causative factors. This is one of those situations. While spinning at a speed which made what actually happened invisible to the human eye this grinder disk simply blew apart. *Something* caused this grinder disk to disintegrate, but whether it was the fact it was affixed to a grinder rated to spin at a potential speed 20 percent higher than the disk was rated may or may not have been the cause. The purported cause and effect relationship simply does not "speak for itself" in this case.

It was up to Ingersoll as the moving party in this summary judgment motion to introduce persuasive evidence supporting this element of its affirmative defense. In fact, it produced *no* evidence on this issue. Ingersoll's failure to do so is all the more remarkable since appellant Huynh's opposition papers highlighted the causation issue and the fact it remained a jury question. Accordingly, there remains a triable issue regarding this essential element of the "misuse" defense, which was the sole grounds of Ingersoll's summary judgment motion.

---

[2]In *McCurter* the plaintiff attached a wheel with a capacity of 2,545 r.p.m.'s to a grinder which operated at 18,000 r.p.m.'s. It should also be noted *McCurter* was not an appeal of a summary judgment but of a judgment entered after a full-fledged trial in which there was substantial evidence the mismatched parts caused the plaintiff's injury.

### B. *A Triable Issue Remains Whether the Warning on the Grinder Was Inadequate and If So Whether That Inadequacy Caused Huynh Injury.*

Even assuming Ingersoll had sustained its burden of demonstrating Huynh alleged "misuse" of its product was the cause of his injury, another triable issue remains as to that affirmative defense.

Huynh responded to Ingersoll's assertion of the affirmative defense of "misuse" of the grinder by contending this was a foreseeable "misuse" of Ingersoll's product. Since it was a foreseeable "misuse"—actually a foreseeable danger in how the product could be used—Huynh argued Ingersoll remains liable unless it provides an *adequate* warning.

This position accurately reflects the current state of the law. ■ "[T]he law now requires a manufacturer to foresee some degree of misuse and abuse of his product, either by the user or by third parties, and to take reasonable precautions to minimize the harm that may result from misuse and abuse." (*Self* v. *General Motors Corp., supra,* 42 Cal.App.3d 1, 7.) "[T]he extent to which designers and manufacturers of dangerous machinery are required to anticipate safety neglect presents an issue of fact." (*Balido* v. *Improved Machinery, Inc.* (1973) 29 Cal.App.3d 633, 645 [105 Cal.Rptr. 890].) "[A] manufacturer owes a foreseeable user of its product a duty to warn of risks of using the product." (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 362 [212 Cal.Rptr. 395].) As *Self* and *Balido* make clear the risks which must be warned against obviously include foreseeable dangerous "misuses" of the product, such as attaching an inappropriate grinding disc to the grinder.

■ Ingersoll did not quarrel with the requirement of an adequate warning. It did not even directly contest Huynh's claim the warning which appeared on the grinder was inadequate. Instead, Ingersoll argued the "intended recipient"—in this case, some of Southwest Marine's employees—in fact read and understood the warning. According to Ingersoll, this was enough to foreclose a product liability claim based on inadequate warning. Even assuming the warning were inadequate, it had achieved its purpose of conveying information to those involved in this incident about the danger which caused Huynh injury. Thus, any inadequacy in the warning could not be a proximate cause of that injury.

The flaw in Ingersoll's logic is its failure to recognize the inadequacy of the warning on the grinder itself may have caused Huynh injury even if *some* of Southwest Marine's employees had read and understood that warning. When a warning is difficult to interpret it is reasonably foreseeable some

users will fail to appreciate its meaning even while others do. Thus, it is reasonably foreseeable those who fail to get the message will harm themselves or others.

Here there was testimony at least a couple of Southwest Marine's employees had properly interpreted the rather vague—and possibly inadequate—language on the "trigger" of the Ingersoll grinder as conveying a warning the machine was rated at 30,000 r.p.m.'s and should not be used with discs which failed to match that rating. If undisputed evidence showed it was one of those employees who had been injured while "misusing" the grinder despite that knowledge, it could be fairly said any possible inadequacy in the warning was irrelevant. The warning had accomplished all it could—making the user aware there was a risk in putting the wrong disc on the grinder. If the user chose to ignore what he understood as a warning, the fact other users might not have been able to interpret the same language as a warning would simply be irrelevant. Similarly, the same might be true if the undisputed evidence demonstrated an employee possessing that knowledge had given the grinder and disc to Huynh.

On the record before the trial court, however, it is not possible to find uncontroverted evidence Huynh received this grinder and disc from a Southwest Marine employee who had read and understood the attempted warning. There is a good chance someone who did not find or comprehend the language on the grinder's trigger placed the disc on the grinder and handed it to Huynh so he could complete his welder's test. It may well be that Southwest Marine was negligent in not having its knowledgeable employees explain this warning to its less knowledgeable employees. But this sort of negligence is entirely foreseeable. A manufacturer does not satisfy its duty to warn by supplying a warning so vague and ambiguous only some users are likely to read and comprehend the danger. It cannot count on the sophisticated users—even those in an employment setting—passing on to the less sophisticated the fact the obtuse language the manufacturer included actually constitutes a warning against certain uses of the product. "It is obvious that its [defective product] handling by an employee of the immediate vendee in the normal course of his work, with consequent exposure to danger, is to be expected." (*Vallis* v. *Canada Dry Ginger Ale, Inc.* (1961) 190 Cal.App.2d 35, 44 [11 Cal.Rptr. 823].)

For these reasons, a triable issue remains whether Huynh would have been supplied this combination of grinder and disc, and consequently been injured, had the grinder itself contained an "adequate" warning. A clearer warning may have alerted the employee who assembled these two elements that they formed a dangerous combination and the employee would have

given Huynh another tool for his welding test. This makes relevant the further triable issue whether the language on the trigger of Ingersoll's grinder constituted an "adequate warning" of the danger of using discs rated below 30,000 r.p.m.'s with this machine. The adequacy of a product warning ordinarily is an issue of fact (*Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347-348 [157 Cal.Rptr. 142].) An examination of a photocopy of the actual "warning" which was part of the record on appeal suggests this indeed is a very close factual issue and not resolvable on summary judgment.[3]

## DISPOSITION

The summary judgment is reversed, and the cause remanded for further proceedings consistent with this opinion. Appellant to recover his costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[3]Given our disposition of the causation and warning issues, we need not and do not reach appellant's third grounds for appeal. In this argument he urges an alternative theory—design defect—which also had been alleged in the original complaint. Huynh pointed to two alleged defects in the grinder's design. First, the grinder allegedly accommodated discs which could not handle its speed rather than being designed to prevent attachment of unsuitable discs (in the way gasoline pumps and automobile gas tanks are designed so only nonleaded gas can be pumped into cars whose engines would be harmed by leaded fuel.) Second, the Ingersoll grinder allegedly failed to have any "guard" of any kind to protect the user should the disc explode or something similar happen.

Huynh asserts either of these defects conceivably could have been a concurrent cause of his injury even if the warning were deemed adequate and Huynh's "misuse" of a 30,000 r.p.m. grinder with a 24,000 r.p.m. disc was what caused the disc to explode. Whether a design is "unsafe" enough to qualify as a "design defect" requires, among other things, the careful balancing of costs and benefits, risks and trade-offs. (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 429-432 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]; Traynor, *The Ways and Meanings of Defective Products and Strict Liability* (1965) 32 Tenn. L.Rev. 363.) On the basis of the meager evidence the parties presented on these issues in connection with the summary judgment motion, it is not possible to determine whether the design defect theory will prove viable during later proceedings which may occur once this case is remanded to the trial court. However, we need not and do not reach the related question whether Ingersoll's evidence on this issue was so weak it was error to grant summary judgment against Huynh on his design defect allegations.