Maria TORRES;  Melchor Torres;
Everardo Torres;  Ramon Torres;
Melchor Torres, Jr., Plaintiffs,

and

City of Madera;  Marcy Noriega,
Plaintiffs—Appellants,

v.

TASER INTERNATIONAL, INC.,
Defendant—Appellee.

No. 05–16468.*

United States Court of Appeals,
Ninth Circuit.

Argued and Submission Deferred
May 17, 2007.

Submitted Nov. 8, 2007.

Filed May 5, 2008.

---

* Companion case No. 05–16762, argued and submission deferred on May 17, 2007, has been decided separately in a published Opinion.

Arturo Gonzalez, Cameron A. Stewart, Morrison & Foerster, LLP, San Francisco, CA, for Plaintiffs.

Bruce D. Praet, Ferguson, Praet & Sherman, Santa Ana, CA, for Plaintiffs–Appellants.

Dan Berman, Nicholas M. Gedo, Wood Smith Henning & Berman LLP, Glendale, CA, for Defendant–Appellee.

Before: B. FLETCHER, SILER,** and HAWKINS, Circuit Judges.

### MEMORANDUM ***

The City of Madera ("Madera") appeals the district court's grant of summary judgment in favor of Taser International ("Taser"), arguing that a genuine issue of material fact with respect to their claims of design defect, negligent design, and negligent failure to warn precludes summary judgment. We affirm.

## I. Design Defect Claims

■ Under California product liability law, "[a] manufacturer ... is liable in tort

---

** The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

if a defect in the ... design of its product causes injury while the product is being used in a reasonably foreseeable way." *Soule v. Gen. Motors Corp.*, 8 Cal.4th 548, 560, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994). Under the "risk/benefit" version of California's design defect law—the only version under which Madera is proceeding here—a plaintiff must establish four elements to make out a prima facie case. *See* Cal. Civ. Jury Inst. ("CACI") § 1204. As applied to this case, these four elements are:

> (1) Taser manufactured the M26 Taser/holster;
>
> (2) "At the time of the use," the Taser/holster "was substantially the same as when it left [Taser]'s possession;"
>
> (3) The Taser/holster "was used ... or misused ... in a way that was reasonably foreseeable to" Taser; and
>
> (4) The Taser/holster's "design was a substantial factor in causing harm to" Torres.

*Id.* Madera cannot make out a prima facie case because the Taser and holster were not "used" when the injury occurred. Madera's argument that "use" is not required under the "risk/benefit" theory fails. California's "risk/benefit" jury instructions contain variants on the word "use" in two places, *see* CACI § 1204 (elements (2) and (4)), forcing us to conclude that *a California court* would likely recognize that a "use" requirement exists in all risk/benefit cases. *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1026 (9th Cir.2003) (on issues governed by state law, federal court's role is to determine what meaning state's highest court would give to state law).[1]

The verb "use" is defined as "1. To bring or put into service or action.... 2. To put to some purpose: avail oneself of...." *Webster's II New Riverside University Dictionary* 1271 (1994). Although California courts have found that storage of an item can constitute "use," *see, e.g., Nelson v. Superior Court*, 144 Cal.App.4th 689, 698, 50 Cal.Rptr.3d 684 (2006), it has only applied such a broad definition of use where the product itself immediately and directly caused the harm while in storage. *Id.* If we were to accept Madera's broad definition of use, it would follow that the M26 Taser and its holster would be in "use" even if Officer Noriega had left them behind in her locker when she reached down and drew her Glock. We cannot accept that the California courts would sanction such a broad definition of use, and therefore hold that Madera cannot make out a prima facie design defect claim.

## II. Negligent Design Claims

■ Summary judgment was also appropriate as to Madera's negligent design claims. A product is not negligently designed so long as "the manufacturer took reasonable precautions in an attempt to design a safe product or otherwise acted as a reasonably prudent manufacturer would have under the circumstances." *Barker v. Lull Engineering, Co.*, 20 Cal.3d 413, 434, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), *accord Crawford v. Weather Shield Mfg., Inc.*, 136 Cal.App.4th 304, 38 Cal.Rptr.3d 787, 798, *granting pet'n for review on unrelated issue*, 44 Cal.Rptr.3d 632, 136 P.3d 168 (2006).

Here, the only evidence regarding Taser's decision-making process on the M26's

---

**1.** The only California case Madera cites as supporting its contention that "use" is not required is *Zentz v. Coca Cola Bottling Co.*, 39 Cal.2d 436, 247 P.2d 344 (1952), a case in which Coca Cola was found liable when a bottle of Coke exploded, even though nobody had touched it. Even in *Zentz*, however, it was the defendant's product—a Coca-Cola bottle—that caused the alleged harm.

design is that it developed a variety of different prototypes for the M26, presented these prototypes at "one of the largest training conferences of police ... officers in the country," determined that the handgun-shaped design "was significantly better in terms of accuracy" than the other prototypes, and received "overwhelming feedback" from training officers that they preferred the handgun-shaped design to the others.

Absent any contradictory evidence—which Madera has not produced—reasonable jurors would have no choice but to conclude that Taser exercised reasonable care in choosing the gun-shaped design for its M26. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Nissan Fire & Marine v. Fritz Companies,* 210 F.3d 1099, 1103 (9th Cir.2000). Accordingly, the district court correctly granted summary judgment on Madera's negligent design claim.

■ As to Madera's additional claim that Taser negligently designed its M26 *holster,* the appropriate standard of care for a weapon manufacturer is beyond the "common knowledge of [laypersons]" and, thus, it was incumbent upon Madera to present at least *some* expert testimony regarding this customary standard of care. *See Miller v. L.A. County Flood Control Dist.,* 8 Cal.3d 689, 700, 702, 106 Cal.Rptr. 1, 505 P.2d 193 (1973) (requiring expert testimony in negligence case to establish how a "reasonably prudent builder" would have acted in a particular situation). Madera has failed to do so. Moreover, even if *expert* testimony were not required to establish this element, Madera has produced no *other* evidence from which a jury could deduce the appropriate standard of care to allow it to compare Taser's actions with this industry standard. Accordingly, sum-

mary judgment was proper as to Plaintiffs' negligently designed holster claim.

## III.   Failure to Warn

■ Under California law, a manufacturer can be held strictly liable for failing to warn a product's foreseeable user about that product's risks, even if those risks come from a foreseeable *mis*use of the product. *Huynh v. Ingersoll–Rand,* 16 Cal.App.4th 825, 833, 20 Cal.Rptr.2d 296 (1993). However, "liability [for failure to warn] does not attach if the dangerous propensity is either obvious *or known to the injured person* at the time he uses the product." *Burke v. Almaden Vineyards, Inc.,* 86 Cal.App.3d 768, 772, 150 Cal.Rptr. 419 (1978) (emphasis added). The district court's conclusion—that the danger of weapon confusion was known to Officer Noriega because her previous mis-draw incident was "exactly the type of event ... Plaintiffs argue they should have been warned about by Defendant, i.e., an alleged danger or risk of weapons confusion between the M26 and a firearm"—is correct, as is the district court's implicit conclusion that the Madera Police Department ("MPD") had "actual awareness" of this danger because Officer Noriega reported the incident to her supervisor, Sgt. Lawson.

Madera's counterargument—that the danger of *actually shooting someone* with a gun rather than an M26 was not known to Officer Noriega or the MPD because Officer Noriega had never *actually shot someone* by mistake—is unpersuasive. The undisputed evidence is that Officer Noriega was concerned enough about mis-drawing her Glock the first time that she reported the incident to two colleagues (one of whom was a supervisor) and continued practicing drawing the proper weapon "all the time" so as to avoid making the same mistake again. The MPD

also was in the process of devising a training program to help officers avoid this confusion. From these facts, no reasonable juror could conclude anything other than that Officer Noriega and the MPD appreciated the danger attendant to mistaking a firearm for an M26, *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505, and that Taser's "duty to warn" was absolved by this actual knowledge, *Burke,* 86 Cal. App.3d at 772, 150 Cal.Rptr. 419.

Accordingly, summary judgment was properly granted on Madera's two failure to warn claims (M26 and holster), as neither the M26 nor the Taser-made holster was defective for failing to contain a warning advising Madera of the dangers of confusing a strong-side holstered M26 with a lethal firearm—a danger it already knew existed.

## IV. Negligent Warning

■ Madera's negligent warning claims fail for the same reason: just as in the strict liability context, a manufacturer has no duty to warn in the negligence context if the complained-of danger is either obvious or known to the user. *See Krawitz v. Rusch,* 209 Cal.App.3d 957, 965–66, 257 Cal.Rptr. 610 (1989). Because the danger of weapon confusion was known to both Officer Noriega and the MPD, no duty to warn could have been negligently breached by Taser, and the district court properly granted summary judgment for Taser on these claims.

## V. Training–Related Claims

■ Madera also brings three training-related claims against Taser: (1) strict liability for defective training; (2) strict liability for defectively designed training materials; and (3) negligent training. The district court rejected all three, concluding respectively that: (1) "[t]raining is a service[, not a product,] and [thus] is not

subject to strict products liability theories" (citing *Jimenez v. Superior Court,* 29 Cal.4th 473, 479, 127 Cal.Rptr.2d 614, 58 P.3d 450 (2002)); (2) Taser's training materials were "incident to" the service of training and thus were not subject to strict products liability theories (citing *Ferrari v. Grand Canyon Dories,* 32 Cal.App.4th 248, 259, 38 Cal.Rptr.2d 65 (1995)); and (3) Taser was not, itself, negligent in training Officer Noriega, as Taser's connection to her training was indirect—she was trained by MPD officers who were, in turn, trained by Lewis, who worked for ALD De Nio Enterprises ("ALD"), a Taser-approved Law Enforcement Product Distributor for California, not *Taser.*

Again, however, the contention central to all permutations of Madera's training-related claims is that Taser improperly failed to alert the MPD (and its officer users) that holstering the M26 and a firearm on the same side of an officer's body creates a risk that an officer will draw one weapon when she means to draw the other. If there was nothing improper about failing to warn Madera of this danger (or, put another way, if failing to warn Madera could not have in any way "caused" the injury because Madera knew about this danger already), then Taser cannot be liable under *any* of the three proposed theories. *See Burke,* 86 Cal.App.3d at 772, 150 Cal.Rptr. 419, and *Krawitz,* 209 Cal. App.3d at 965–66, 257 Cal.Rptr. 610. As explained above, both Officer Noriega and the MPD were aware of the potential for weapon confusion *before* the Torres shooting and, thus, Taser's failure to alert Madera about this danger via its training materials or the indirect training it may have provided through ALD's Lewis does not give rise to an independent cause of action.

Accordingly, we affirm the district court's grant of summary judgment on Madera's three training-related claims.

## VI. Breach of Warranties

Madera also claims that Taser breached express and implied warranties when the M26 and holster "failed to perform in a safe manner." Neither Madera's Complaint nor its subsequent filings explain exactly what promises it believes Taser made (either explicitly or implicitly) when the MPD purchased its M26s. Without any elaboration as to exactly which warranties are at issue, it is impossible to determine whether Taser breached these unspecified "warranties."

Moreover, the California Supreme Court has recently emphasized that "[t]he law of contractual warranty governs *damage to the product itself*" that results from a product defect, *Jimenez*, 29 Cal.4th at 483, 127 Cal.Rptr.2d 614, 58 P.3d 450 (emphasis added); it does not govern damage to other products *or injuries to individuals* that result from that same product defect, *id.*; *see also Seely v. White Motor Co.*, 63 Cal.2d 9, 15, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) ("[T]he warranty theory [is] not suited to the field of liability for personal injuries."). Instead, when a product defect causes "physical harm to [a] person, ... [a] plaintiff [may] recover [via] *strict products liability*." *Jimenez*, 29 Cal.4th at 482–83, 127 Cal.Rptr.2d 614, 58 P.3d 450 (emphasis added).

Here, Madera has not even *alleged* (much less put forth any evidence) that the M26 or its holster were damaged in any way during the Torres incident; Madera seeks damages *only* to compensate it for the personal injury Torres sustained at the hands of Officer Noriega. Without any allegation that the M26 or the holster "defect" led to any damage to those products themselves, Madera cannot prevail on its breach of warranty claims.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is **AFFIRMED.**